NORMAN SANBORN *vs.* AGNES S. BRUNETTE & another.

Suffolk.     October 7, 1943. — December 27, 1943.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Insurance*, Disclaimer of liability, Motor vehicle liability insurance. *Estoppel*.

Evidence did not show to be plainly wrong a finding that, in an action for injuries sustained by a guest in an automobile, an attorney, who was representing the defendant through employment by an insurance company covering the defendant's risk, had effectively disclaimed his company's liability when, upon the defendant's unequivocally testifying at a trial before an auditor that he had misstated his residence in procuring registration of his automobile and the insurance thereon, the attorney stated to the defendant that the company would not pay any judgment against him and that he had better get an attorney to represent him personally, although the defendant then chose to have the attorney represent him personally and he had done so through-

out the trial before the auditor and in reserving the defendant's rights to a jury trial after an adverse finding by the auditor, and no formal notification of the disclaimer was given to the defendant until about five months after the auditor's hearing.

A disclaimer of liability of an insurer under a guest occupancy coverage in a motor vehicle liability policy on the ground that the insured had intentionally misstated his residence in his application for registration and the insurance, not asserted until the defendant had unequivocally testified as to such false applications at a trial before an auditor, was seasonable although the insurer eight months before had prepared and caused the defendant to make oath to answers to interrogatories which definitely disclosed that the statement as to residence in the applications was untrue.

BILL IN EQUITY, filed in the Superior Court on November 26, 1941.

The case was tried before *Brogna,* J.

*W. Kopans,* for the plaintiff.

*T. H. Mahony,* for the defendant Standard Accident Insurance Company.

Cox, J. The plaintiff recovered judgment against the defendant Brunette for bodily injuries received on August 27, 1939, while a guest occupant in an automobile owned and operated by that defendant, upon which the defendant Standard Accident Insurance Company, hereinafter called the company, had issued a policy of liability insurance. This suit is brought under G. L. (Ter. Ed.) c. 175, § 113, and G. L. (Ter. Ed.) c. 214, § 3 (10), to reach and apply the alleged obligation of the company to Brunette in satisfaction of the plaintiff's judgment. The policy in question contained the so called "Guest Occupant" coverage. Inasmuch as the obligation, if any exists, which the plaintiff is seeking to reach arose under the guest occupant coverage and not under the Massachusetts compulsory insurance provisions, any defence which would be available to the company against Brunette is equally available against the plaintiff. G. L. (Ter. Ed.) c. 90, § 1A, as amended by St. 1933, c. 372, § 3; § 34A, as amended by St. 1935, c. 459, §§ 1, 2. *Birnbaum* v. *Pamoukis,* 301 Mass. 559, 560–561, and cases cited. The testimony is reported. It appears from the record that nineteen papers or documents were introduced in evidence, but they are not printed in the

record, and it does not appear that any order was made with reference to them apart from the order that the testimony be reported. See G. L. (Ter. Ed.) c. 214, § 24; *Yoffa* v. *National Shawmut Bank*, 288 Mass. 422, 426–427, and cases cited. At the oral argument the plaintiff conceded that the company, on the facts, had a right to disclaim, if the disclaimer was seasonably made. The bill was taken pro confesso against Brunette, and the suit was heard on its merits before a judge of the Superior Court who made a report of material facts. A final decree was entered dismissing the bill, and the plaintiff appealed.

The judge found that the plaintiff was injured while riding as a guest in an automobile owned and operated by Brunette. Her insurance policy, issued by the company, covered guest occupancy. In her application for insurance and for registration she stated that she lived in Wellesley and that the automobile was garaged there, when in fact she lived in Boston and the automobile was garaged there. She misstated her residence intentionally. The declaration of the plaintiff in the action against Brunette contained a count for negligence, one for gross negligence, and one for illegal registration. An attorney designated by the company filed an appearance and answer, and the company undertook the complete defence of the action, prepared the answers to interrogatories propounded by the plaintiff, and on May 9, 1940, had Brunette sign them and caused her oath to be taken thereto. Her answers definitely disclosed that when she applied for registration she lived in Boston, and that the statement in her application that she lived in Wellesley was untrue. Trial was begun before an auditor on January 13, 1941, in the course of which the plaintiff introduced the interrogatories and answers relating to residence. After the plaintiff rested, the attorney representing the assured and who had been designated by the company called Brunette as a witness, and when she testified that at the time she applied for registration and thereafter she lived in Boston and not in Wellesley, he announced that on behalf of the company he disclaimed liability on the policy, and further stated that he was withdrawing as counsel, but in

compliance with her request continued to represent her personally until the close of the trial before the auditor. The company had known the situation concerning Brunette's residence through her sworn answers to interrogatories for "eight months before it disclaimed," during which time it had retained full control of the defence. The judge ruled that the company disclaimed seasonably and was not estopped to set up the disclaimer in the suit at bar.

1. The plaintiff contends that the action of the attorney for the company before the auditor did not amount to a disclaimer, and that the finding of the judge that there was a disclaimer at that trial was plainly wrong. There was evidence that, at the trial before the auditor, Brunette testified that she had misstated her residence in her application for insurance, and that when she registered her automobile she was not living in Wellesley. In her application for registration dated January 1, 1939, she gave Wellesley as her Massachusetts residential address and stated that the automobile was garaged there. When Brunette testified that she had misstated her residence in her application, Mr. Coffin, the attorney designated by the company to defend the action, asked her: "Have you a personal attorney who represents your interest?" Brunette replied: "No." Mr. Coffin then said: "I give you notice that you had better get one because I am telling you here that our company will not pay any judgment rendered against you. I will ask for a continuance now, if you want it, and you may have whatever opportunity you wish to get counsel to represent you. . . . Do you desire time to get somebody to represent you?" Brunette replied: "I do not know." Mr. Coffin then asked: "Do you desire me to finish this trial?" Brunette replied: "Is that the best way, or what." Mr. Coffin said: "I do not know. I think you are entitled to make your own choice." The auditor then said: "We will take a recess. I will see counsel." It was agreed in the suit at bar that, when the trial was resumed before the auditor, Brunette said to Mr. Coffin: "I have decided you might keep going," and it seems that counsel assumed that she also said: "I imagine that is what I have been paying for all these years." It seems that

Mr. Coffin finished the trial. On April 18, 1941, the auditor filed his report and notified the attorneys. The firm of attorneys of which Mr. Coffin appears to be a member filed the defendant's insistence on jury trial and reservation of rights on April 26, 1941, and also a motion to recommit on May 13, 1941. Brunette received a letter dated June 13, 1941, from the company, which was marked as an exhibit but does not appear in the record. The parties appear to have assumed that in this letter the company disclaimed liability. Mr. Coffin formally filed a withdrawal of appearance for the defendant on June 23, 1941, and also on June 30, 1941; and on June 30, 1941, a Mr. Barlow, who was an attorney for the company and had appeared for the defendant, withdrew his appearance. He had filed the answer, interrogatories to the plaintiff on April 29, 1940, and on May 7, 1940, a motion to nonsuit the plaintiff for failure to answer the same. There was evidence that Mr. Barlow was the company's assistant claim manager. Brunette testified that she never received a bill from Mr. Coffin for services rendered. She denied that she had asked him to represent her.

We are of opinion that the findings of the trial judge are not plainly wrong and that they cannot be disturbed. See *Restighini* v. *Hanagan*, 302 Mass. 151, 152–153, and cases cited. They amount to findings that the company at the trial before the auditor disclaimed liability "decisively and completely," see *Goldberg* v. *Preferred Accident Ins. Co.* 279 Mass. 393, 399; and that the action taken by Mr. Coffin in finishing that trial was in behalf of Brunette solely and not as attorney for the company. The trial judge could discredit the testimony of Brunette that she never received a bill for the services of Mr. Coffin, if he deemed the matter important. The fact, if it be a fact, that the letter of the company dated June 13, 1941, contained a statement disclaiming liability did not require a finding that the disclaimer by Mr. Coffin was not complete and effective. Brunette had notice of the fact that the company was disclaiming liability at the trial before the auditor. Although the trial judge made no specific finding as to the actions of the attor-

neys for the company after the trial before the auditor, it is hardly to be assumed that the evidence of what they did was questioned. Nevertheless, the trial judge could find that what Mr. Coffin did after the trial was in furtherance of Brunette's request that he finish the trial in her behalf. "Action taken after the filing of the auditor's report looking solely toward the preservation of the right of the insured to a jury trial could not have harmed . . . [her] in any way." *Birnbaum* v. *Pamoukis*, 301 Mass. 559, 563. A finding was not required that anything that Mr. Coffin did after the filing of the auditor's report deceived Brunette or lulled her into a false sense of security or induced her to do anything different from what she might otherwise have done, to her detriment. *Birnbaum* v. *Pamoukis*, 301 Mass. 559, 563–564, and cases cited.

2. The plaintiff contends further that the trial judge was in error in ruling that the disclaimer at the trial before the auditor was made "seasonably" and that the company was not estopped to set it up in this suit, in view of the finding that the "insurer had known the situation concerning the assured's residence through her sworn answers to interrogatories for eight months before it disclaimed, during which time it had retained full control of the defense." He contends that, since the sole fact relied upon by the company to disclaim was known by it for this length of time, it could not continue in control of the defence and then attempt to evade responsibility at the hearing before the auditor when no new facts were disclosed. We are of opinion, however, that there was no error. Until Brunette testified before the auditor, the company was in possession of two contradictory statements which had been made by her in reference to her residence at the time she applied for insurance and registration. Whether the company could successfully disclaim depended upon the story that Brunette would definitely adhere to at the trial. Until such time as Brunette's residence at the time in question was definitely established, the company was not bound to accept the statement made in her answers to the interrogatories in preference to the statement in her application for insurance, even though the former was

made under oath. It was open to Brunette at the trial to explain that she was mistaken in her first answer. *Blake* v. *Stoddard*, 107 Mass. 111. *Walsh* v. *Wyman Lunch Co.* 244 Mass. 407, 409. See *Morrissey* v. *Powell*, 304 Mass. 268. In the case at bar, however, Brunette adhered to her answers to the interrogatories, and when she did the company disclaimed liability. In the trial of cases, it is a well established rule of law that, if a party or witness makes inconsistent statements, it becomes a question of fact to be determined what the truth is, in the absence of a final and definite adherence to one statement in preference to the other as being the truth. *Sullivan* v. *Boston Elevated Railway*, 224 Mass. 405, 406. *Ruane* v. *Doyle*, 308 Mass. 418, 422, and cases cited. As was said in *Restighini* v. *Hanagan*, 302 Mass. 151, at pages 153–154: "The company could, pending ascertainment of the essential facts pertinent to its liability under the policy, take the usual measures in defence of the actions without barring itself from subsequently withdrawing when it discovered that the contract of insurance did not cover the person who was operating the automobile when the accident occurred." In that case the essential fact was ascertained at the trial before the auditor. See *Novo* v. *Employers' Liability Assurance Corp. Ltd.* 295 Mass. 232.

The cases of *Barbeau* v. *Koljanen*, 299 Mass. 329, and *Klefbeck* v. *Dous*, 302 Mass. 383, are distinguishable. It is true that in each of these cases the court points out that the insurer had knowledge of facts before the trial of the actions against the insured upon which it relied in subsequently disclaiming liability. In each case, however, the insurer continued in the defence and it was not until after a verdict that a disclaimer was made. As was said in the *Klefbeck* case at page 387: "The company, however, could not, after having acquired information sufficient to warrant a disclaimer, continue in defence of the action and, upon the rendition of an adverse verdict, then for the first time rely upon such information and withdraw. It was bound to exercise good faith and due diligence." The case at bar is also distinguishable from *Daly* v. *Employers Liability Assurance Corp. Ltd.* 269 Mass. 1, where the insurer, knowing that

the insured would not be present at the trial, continued in defence of the action and had motions for new trials filed before it withdrew. Compare *Goldberg* v. *Preferred Accident Ins. Co.* 279 Mass. 393, 398–399; *Phillips* v. *Stone,* 297 Mass. 341, 343–345; *Birnbaum* v. *Pamoukis,* 301 Mass. 559, 563–564.

*Decree affirmed with costs.*