MARTHA SALONEN *vs.* LYDIA J. PAANENEN & another.

Plymouth.    November 4, 1946. — January 6, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & SPALDING, JJ.

*Insurance,* Motor vehicle liability insurance, Disclaimer of liability. *Estoppel. Evidence,* General objection to admission of evidence.

A finding of breach by the insured of a provision of a motor vehicle liability insurance policy requiring him to "cooperate with" the insurer and to "assist in . . . securing and giving evidence . . . and in the conduct of suits" was not plainly wrong on evidence that the insured, after having given a statement to the insurer as to the occurrence of an accident in which an occupant of his automobile, operated by him, was injured, repudiated that statement at a hearing before an auditor in an action against him by the injured person and in his testimony before the auditor described the occurrence of the accident in a manner much more favorable to the injured person.

A conclusion that an insurer was not estopped to disclaim liability under a motor vehicle liability insurance policy because of breach by the insured of a provision of the policy requiring him to "cooperate with" the insurer was proper where it appeared that, after a guest occupant of the insured automobile had been injured while it was being operated by the insured, the insured committed the breach through falsity either in a statement as to the accident given to the insurer or in testimony contradictory to that statement later given by him at an auditor's hearing in an action by the injured person against him; that seasonably after the giving of such testimony and before the auditor's report the insurer notified the insured that because of such conduct on his part it would not satisfy any judgment against him but "reserve[d] all [its] rights and defences" under the policy, that the insured was at liberty to engage counsel at his own expense to protect his interest and to have the insurer's counsel associate with him and that the insurer would continue to defend the action under such reservation; that the insured did not offer or attempt to assume defence of the action; that the insurer thereafter continued the defence until judgment was entered against the insured; and that the insurer did not take any unfair advantage of the insured.

A defence available to the insurer under a motor vehicle liability insurance policy as against the insured for breach of the policy by the insured was equally available to the insurer as against a judgment creditor of the insured seeking to reach and apply to the satisfaction of his judgment the insurer's obligation under noncompulsory "guest occupant" coverage in the policy.

A general objection to the admission in evidence of a previous inconsistent statement of a witness, admissible only for the limited purpose of affecting his credibility, was unavailing.

BILL IN EQUITY, filed in the Superior Court on April 20, 1945.

The suit was heard by *Sullivan*, J.

*A. F. Lyon*, for the plaintiff.

*H. B. White*, for the defendant Maryland Casualty Company.

SPALDING, J. The plaintiff, having recovered a judgment against the defendant Paanenen (hereinafter called the assured), brought this bill in equity to reach and apply the obligation of the defendant insurance company (hereinafter called the company) under a motor vehicle liability policy issued by it to the assured. See G. L. (Ter. Ed.) c. 175, § 113; c. 214, § 3 (10). The judge made voluntary findings of fact and ordered the bill dismissed. From a final decree entered pursuant to this order the plaintiff appealed. The evidence is reported.

The facts may be summarized as follows: The judgment which the plaintiff is seeking to satisfy stems from an action of tort brought by her against her sister, the assured, to recover compensation for personal injuries which she sustained on July 6, 1940, while riding as a guest in an automobile owned and operated by the assured. At the time of the accident the assured was the holder of a motor vehicle liability policy issued by the company. The policy contained a coöperation clause,[1] and also a provision that "no action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all of the terms of this policy."

On July 18, 1940, twelve days after the accident, one Meehan, a representative of the company, called upon the assured and obtained from her a statement of what she knew about the accident. Meehan, who had written down what the assured had told him, then read the statement to her, and she stated that it was true and correct but refused to sign it until it had been approved by her husband. The

---

[1] The material portions of this are as follows: "Assistance and Co-operation of the Insured. The insured shall co-operate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits."

latter, however, withheld his approval and the assured never signed it. In it the assured stated that just prior to the accident she noticed an "old Ford travelling in the opposite direction"; that she did not remember much after that; that she moved over a little closer to her right side of the road; that her "auto must have gone off the road and struck a tree on the right side"; and that she was unable to say whether or not the Ford had crowded her off the road. She also stated that her sister "did not object to the manner or the speed of . . . [her] auto on this occasion."

When the case came on for trial before an auditor, the assured repudiated material portions of the statement and corroborated a substantially different version of the accident given by the plaintiff, which in substance was that the assured was travelling at forty to forty-five miles per hour and her automobile swerved from one side of the road to the other several times; that the plaintiff objected to the manner in which the assured was driving; and that the assured without slackening her speed looked around to comment about some milk that the plaintiff had spilled and while she was doing this the automobile went off the road. The assured also testified that she did not see the "old Ford" referred to in the statement. She admitted that she desired to see her sister compensated for her injuries. After the auditor's hearing and before his finding, the company wrote the assured on March 3, 1943, advising her that it would not satisfy any judgment that might be rendered against her and that it "reserve[d] all rights and defences which it . . . [had] under the . . . policy," assigning as its reasons that the assured had failed to coöperate and that the furnishing of inaccurate information with respect to the happening of the accident had impeded its investigation and preparation of the case for trial. The letter also stated that the assured was at liberty at her own expense to engage counsel to protect her interest and to have him associated with its counsel, and that the company would continue the defence of the case under its reservation of rights.

On April 22, 1943, the company wrote to the assured informing her that the auditor had found for the plaintiff in the amount of $2,400 and that it would continue in the defence of the action subject to the reservation previously made; the letter also stated that she was "at liberty to engage . . . [her] own counsel as previously advised" but at her own expense. The case was then tried to a jury, which returned a verdict in an amount slightly larger than that found by the auditor. Exceptions brought to this court by the defendant were overruled.[1] After judgment was entered the company informed the assured that pursuant to its reservation of rights in its letters of March 3, 1943, and April 22, 1943, it would not honor the execution.

The judge found that the assured had violated the coöperation clause and that the disclaimer by the company was justified. He also found that notice of the disclaimer was given to the assured as soon as possible after the grounds for it were discovered by the company; that no unfair advantage was taken of the assured; and that the company was not estopped to deny liability under the policy.

We think that the finding of the judge that the assured violated the "coöperation" clause cannot be said to be plainly wrong. We reach this conclusion without reliance on the finding of the judge, which is not supported by the evidence, that at the jury trial, because of her repudiation of her statement, the assured was not called as a witness by the company's counsel who defended her at that trial.[2] The evidence amply warranted a finding that the assured, in her testimony, repudiated in material respects her version of the accident contained in the statement. Either the statement or the testimony was false; both could not be true. The intentional furnishing of false information of a material nature either before or at the trial would be a breach of the coöperation clause. *Searls* v. *Standard Accident Ins. Co.* 316 Mass. 606. *Brogdon* v. *American Automobile Ins. Co.* 290 Mich. 130, 135. *Bassi* v. *Bassi*, 165 Minn.

---

[1] *Salonen* v. *Paanenen*, 317 Mass. 771.

[2] The evidence shows that the assured testified at the jury trial, and there is no evidence to the contrary.

100. *Coleman* v. *New Amsterdam Casualty Co.* 247 N. Y. 271, 276. *Francis* v. *London Guarantee & Accident Co.* 100 Vt. 425, 430. *United States Fidelity & Guaranty Co.* v. *Wyer,* 60 Fed. (2d) 856 (C. C. A. 10). *Ocean Accident & Guarantee Corp..Ltd.* v. *Lucas,* 74 Fed. (2d) 115 (C. C. A. 6). See note in 72 Am. L. R. 1446. As we said in the *Searls* case cited above, "Coöperation requires that there must be an effort to tell the truth no matter who is helped or hurt. There is nothing more mischievous in litigation or destructive to the administration of justice than the deliberately untruthful witness, be he apparently aiding in preparation for trial or committing perjury on the stand" (page 609).

The plaintiff argues that the defence of failure to coöperate is not open to the company because, by continuing to defend the case after learning of the alleged breach of the policy, it was estopped from denying liability. It is well settled in this Commonwealth that an insurer, after having acquired information sufficient to warrant a disclaimer of liability, cannot continue in defence of an action and, upon the rendition of an unfavorable decision, then be heard to say it is not liable. *Daly* v. *Employers Liability Assurance Corp. Ltd.* 269 Mass. 1, 5. *Goldberg* v. *Preferred Accident Ins. Co.* 279 Mass. 393, 398–399. *Barbeau* v. *Koljanen,* 299 Mass. 329, 332–333. *Klefbeck* v. *Dous,* 302 Mass. 383, 387. *Sweeney* v. *Frew,* 318 Mass. 595, 598. The reason for this rule, which rests on estoppel or waiver (*Phillips* v. *Stone,* 297 Mass. 341, 344), is that, having led the assured to rely exclusively on its protection during the period when he might have protected himself, an insurer cannot, in fairness, thereafter withdraw that protection.

But we have held that the defence of an action against an insured under a so called "nonwaiver" agreement will not estop the insurer from subsequently disclaiming liability. *Liddell* v. *Standard Accident Ins. Co.* 283 Mass. 340. *O'Roak* v. *Lloyds Casualty Co.* 285 Mass. 532, 535. See *Sanborn* v. *Brunette,* 315 Mass. 231, 235–236. Whether, as here, a reservation of rights by an insurer will have a like effect appears not to have been decided by this court. There is, however, an intimation in *Daly* v. *Employers Liability As-*

*surance Corp. Ltd.* 269 Mass. 1, 4, that it would. See *Liddell
v. Standard Accident Ins. Co.* 283 Mass. 340, 343. Elsewhere the law is well settled that no estoppel arises against
an insurer by reason of its defence of an action against its
insured after acquiring information justifying a disclaimer
where such defence is conducted under a reservation of
rights. [1] The reasons for this view are persuasive. Where
an insurer seasonably notifies its insured that it is continuing
to defend the case subject to its right to disclaim later, the
insured is in no position to say that he has been misled, and
can take the necessary steps to protect his rights. In this
situation the basis for an estoppel is lacking. "In order to
work an estoppel it must appear that one has been induced
by the conduct of another to do something different from
what otherwise would have been done and which has resulted to his harm and that the other knew or had reasonable
cause to know that such consequence might follow." *Boston & Albany Railroad* v. *Reardon,* 226 Mass. 286, 291. The
"law does not regard estoppels with favor, nor extend them
beyond the requirements of the transactions in which they
originate." *Tracy* v. *Lincoln,* 145 Mass. 357, 360. *Lunt* v.
*Aetna Life Ins. Co.* 261 Mass. 469, 473. *McLearn* v. *Hill,*
276 Mass. 519, 524. *Abbott* v. *Bean,* 295 Mass. 268, 280.
*Sweeney* v. *Frew,* 318 Mass. 595, 599.

We are of opinion that the conclusion of the judge that the
company was not estopped was warranted. The company
found itself on the horns of a dilemma through no fault of
its own. If it continued to defend the case, it ran the risk
of losing its right to disclaim later. If it severed its con-

---

[1] *Meyers* v. *Continental Casualty Co.* 12 Fed. (2d) 52, 56 (C. C. A. 8). *Atlantic Lighterage Corp.* v. *Continental Ins. Co.* 75 Fed. (2d) 288 (C. C. A. 2).
*Western Casualty & Surety Co.* v. *Beverforden,* 93 Fed. (2d) 166 (C. C. A. 8).
*Hill* v. *Standard Mutual Casualty Co.* 110 Fed. (2d) 1001 (C. C. A. 7). *Basta*
v. *United States Fidelity & Guaranty Co.* 107 Conn. 446, 450. *Ancateau* v.
*Commercial Casualty Ins. Co.* 318 Ill. App. 553. *Sargent Manuf. Co.* v. *Travelers' Ins. Co.* 165 Mich. 87, 94. *Oehme* v. *Johnson,* 181 Minn. 138. *Ford
Hospital* v. *Fidelity & Casualty Co.* 106 Neb. 311. *Zisko* v. *Travelers Ins. Co.*
117 N. J. L. 366. *Mason-Henry Press* v. *Aetna Life Ins. Co.* 211 N. Y. 489.
*Joseph Gordon, Inc.* v. *Massachusetts Bonding & Ins. Co.* 229 N. Y. 424.
*Clark-Motor Co.* v. *United Pacific Ins. Co.* 172 Ore. 145. *DePasquale* v. *Union
Indemnity Co.* 50 R. I. 509. *Edgefield Manuf. Co.* v. *Maryland Casualty Co.*
78 S. C. 73. *Eakle* v. *Hayes,* 185 Wash. 520. *United States Guarantee Co.* v.
*Liberty Mutual Ins. Co.* 244 Wis. 317. See also cases collected in note 81 Am.
L. R. 1326, 1382, et seq.

nection with the case, it also ran the risk of incurring liability to its assured.  Under the policy the company had agreed to defend all suits, including those that were groundless or fraudulent, which were brought against the assured "as respects insurance afforded" by the policy.  If without excuse the company refused to defend, or defended negligently, it would be liable to the assured.  *Abrams* v. *Factory Mutual Liability Ins. Co.* 298 Mass. 141, 143.  *Damiano* v. *National Grange Mutual Liability Co.* 316 Mass. 626, 629.  To avoid this dilemma the company chose the course adopted here and notified the assured that it would thereafter defend under a reservation of rights.  We see no reason why it could not do this.  The assured was seasonably [1] apprised of the company's position and it is difficult to see how she was "lulled into a false sense of security or deprived of . . . [her] opportunity to defend . . . or 'induced to do anything different from what . . . [she] otherwise would have done,' to . . . [her] detriment."  *Birnbaum* v. *Pamoukis,* 301 Mass. 559, 563.  Had the company abandoned the defence in the middle of the auditor's hearing the assured would have been in a serious predicament, for it is very unlikely that she could have secured counsel on such short notice who could have adequately conducted her defence.

We are not to be understood as holding that an insurer may reserve its rights to disclaim liability in a case and at the same time insist on retaining control of its defence. But here the assured never, after learning of the company's position, offered or attempted to assume defence of the action but, for aught that appears, acquiesced in the conduct of the case by the company.  See *Meyers* v. *Continental Casualty Co.* 12 Fed. (2d) 52, 57 (C. C. A. 8); *Ancateau* v. *Commercial Casualty Ins. Co.* 318 Ill. App. 553, 557;

---

[1] The findings of the judge that the company gave the assured notice of its disclaimer of liability as soon as possible after it learned of the ground therefor, and that it took no unfair advantage of her are warranted by the evidence. The evidence discloses that at the hearing before the auditor the attorney for the company, upon learning that the assured was going to repudiate the statement, said to her, "I am going to continue in the defence of this case to protect the company's rights only. . . . I want you to understand that in the event that your sister recovers a judgment, that I am going to recommend that the company not pay the judgment for your failure to co-operate.  And you can go back and tell your sister and her counsel that."

*Zisko* v. *Travelers Ins. Co.* 117 N. J. L. 366, 368; *Clark-Motor Co.* v. *United Pacific Ins. Co.* 172 Ore. 145, 156.

The plaintiff's rights do not rise higher than those of the assured. *Sweeney* v. *Frew*, 318 Mass. 595, 597. Since the obligation that the plaintiff is seeking to reach arose under the "guest occupant" coverage of the policy and not under the compulsory insurance provisions, any defence which would be available to the company against the assured is equally available against the plaintiff. *Sanborn* v. *Brunette*, 315 Mass. 231, 232. Compare G. L. (Ter. Ed.) c. 90, § 34A, as amended; c. 175, § 113A (5); *Warecki* v. *United States Fidelity & Guaranty Co.* 270 Mass. 233, 237.

A question of evidence remains. Counsel for the company called to the stand one Hayden, a police officer who had investigated the accident, and, after directing his attention to prior inconsistent statements made by him in a writing that he had signed, introduced it in evidence subject to the plaintiff's exception. The document was clearly admissible as a prior inconsistent statement (G. L. [Ter. Ed.] c. 233, § 23) and no contention is made to the contrary. The plaintiff argues only that the judge erred in not limiting the use to be made of it. Evidence of this sort, of course, has no affirmative probative force, and can only affect credibility. *Mroczek* v. *Craig*, 312 Mass. 236, 239, and cases cited. We have no way of knowing on this record what use the judge made of it; but if the plaintiff wanted its use limited she should have asked for a ruling to that effect. "Where evidence is admissible on any ground, the objecting party must clearly specify incompetent ends for which it may be considered and ask for definite instructions in order to save a valid exception." *Drew* v. *Drew*, 250 Mass. 41, 45. *Solomon* v. *Dabrowski*, 295 Mass. 358, 359.

*Decree affirmed with costs.*