CLYDE A. GLEASON *vs.* HARDWARE MUTUAL CASUALTY COMPANY.

Berkshire.    September 21, 1954. — November 4, 1954.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Insurance*, Waiver, Disclaimer of liability, Motor vehicle liability insurance. *Waiver*. *Law of the Case*.

A finding, that the insurer under a policy of noncompulsory motor vehicle liability insurance waived a breach of a coöperation clause in the policy committed by the insured by making to the insurer three intentionally false statements as to the manner in which an accident involving the insured automobile had occurred, was not warranted where it appeared that such statements, although containing inconsistencies of a kind not unusual in such cases, did not disclose their falsity; that some months after they were given counsel for the insurer learned through answers to interrogatories filed in an action of tort against the insured by one injured in the accident that the injured person asserted a version of the accident materially different from that given by the insured in his statements; that nearly nine months later counsel notified the insured that the insurer's "investigation" indicated that the accident did not occur as described in the insured's statements and that accordingly the insurer would continue defence of such action "only on the condition" of "not waiving" its rights

under the policy; and that shortly thereafter, following a fourth statement by the insured, the insurer on the ground of noncoöperation disclaimed liability and its counsel withdrew from the action, and, with new counsel representing the insured, a trial of the action took place resulting in a judgment against him. [708–709]

Although this court usually declines to reconsider a question previously decided by it in the same case, it has the power to reconsider. [710]

CONTRACT. Writ in the Superior Court dated May 27, 1947.

Following the decision of this court reported in 329 Mass. 56, the action was tried before *Giles,* J.

*Frederick M. Myers,* for the defendant.

*Lincoln S. Cain,* (*Abraham W. Chesney* & *Rudolph A. Lewis* with him,) for the plaintiff.

WILKINS, J. This action upon a motor vehicle liability policy for breach of an agreement to furnish guest coverage comes here the third time. On January 19, 1946, the plaintiff Gleason, operating the insured automobile, struck a pole and injured three guest occupants. The latter recovered judgments in tort against Gleason, and brought suit in equity under G. L. (Ter. Ed.) c. 175, § 113, and c. 214, § 3 (10), against Gleason and the defendant Hardware Mutual Casualty Company (hereinafter called Hardware), to reach and apply the obligation of the policy. The bill was taken pro confesso against Gleason, and after hearing was dismissed against Hardware. In 324 Mass. 695, our first decision in the present action, we affirmed an order overruling a demurrer by Gleason to Hardware's answer which set up res judicata based upon an allegation that in the equity suit Gleason and Hardware had been adversaries and had litigated the issues of coverage and waiver. In 329 Mass. 56 we sustained Gleason's exceptions to the direction of a verdict for Hardware, the evidence disclosing that Gleason and Hardware had not been adversaries or litigated those issues in the equity suit.

In a new trial there has been a verdict for Gleason, and one of Hardware's exceptions is to the denial of its motion for a directed verdict. Gleason concedes that there was a breach by him of the coöperation clause because he made

intentionally false statements to Hardware as to how the accident happened, but contends that that breach was waived. He also takes the position that as a result of our decision in 329 Mass. 56 it became the law of the case that there was evidence for the jury that there had been such a waiver.

The accident occurred on a public way in Pittsfield. The guests were Agatha Austin, seated in front beside Gleason, and a husband and wife named Cooper, seated in back. On January 20, the day after the accident, Gleason furnished a claim report to Hardware, and in response to the question, "Tell in your own words just what happened," answered: "I was driving towards Pittsfield on Dalton Avenue when my car swerved to the left and struck a telephone pole. The pole is located about 500 yards towards Pittsfield from the flashing traffic signals. The weather was clear but cold. The roadway was clear, but ice on the edge near the sidewalk."

On January 28 Gleason gave Hardware a second written statement, which contained the following: "I was coming to Pittsfield from Dalton at about 10:30 P.M. on Dalton Ave. close to the traffic signals (about 500 ft. away) first thing I knew there was a telephone post directly in front of me. I slammed my brakes on, but due to the condition of the road, which was icy on the shoulder, I skidded into the post. . . . We had been riding around with the same people in the car for about 3 hours. . . . I had not been drinking at all and I can only attribute the accident to a momentary lapse. . . . I must have lost control momentarily and when I saw the pole it was too late."

On February 5 Gleason gave Hardware a third written statement in which he said: "When we got down on Dalton Ave. I suddenly saw a telephone pole directly in front of me. I applied the brakes but we hit the pole. . . . We had not been drinking that evening. . . . The only way I can figure the thing out is that I drowsed off momentarily. I have read this statement and it is true."

At the trial Charles R. Alberti, Esquire, testified that he was counsel for the guests in the tort action against Gleason; that on July 15, 1946, he filed answers of Agatha Austin to interrogatories propounded by Holland W. Hazen, Esquire, the attorney who on behalf of Hardware represented Gleason in that action; that in response to an interrogatory as to how the accident occurred she had answered, "I was riding in the front seat with Clyde Gleason. . . . All of a sudden, Mr. Gleason made an indecent assault on me. I was startled and jumped. The car went from the right hand side of the road to the left hand side of the road and struck a pole"; and that he mailed a copy of the answers to Mr. Hazen on July 15, 1946.

Gleason testified that there was no communication between Hardware and him after February 5, 1946, until April 7, 1947. On the latter date Mr. Hazen wrote Gleason a letter, which read in part: "Our investigation into the manner in which this accident happened indicates that it did not happen in the way you told us in your statement. In view of this situation, it becomes necessary to draw to your attention that in continuing the defense of this case for you involving the three claims, we are doing so only on the condition that we are reserving all rights which we have under the policy under which you are insured and we are not waiving any of them." The letter concluded by stating that the defence of Gleason's case was being referred to Frederick Myers, Esquire.

On April 12, 1947, Mr. Myers entered his appearance for Gleason in the tort action. On April 15, 1947, Gleason gave to a representative of Hardware a fourth written statement, which read in part as follows: "I had taken Agatha out but once prior to the night of the accident. . . . On the night of the accident we were coming along Dalton Ave. toward Pittsfield when I put my right hand on her knee and she brushed it away, and told me to quit it. She didn't say it in such a way that I thought she meant it too seriously and a little later along the same avenue I put my right hand on her knee again. . . . I can remember her grabbing my

arm or wrist and telling me to stop it. . . . I must have turned toward her when she grabbed my wrist for when I looked forward again a telephone pole was directly in front of my car. . . . I didn't wish to tell the true story and that is why I made up the story of dozing off."

On April 16, 1947, Mr. Hazen wrote Gleason that Gleason's statement of the preceding day was substantially different from his former statements; that he had not coöperated as required by the policy; that Hardware would not extend coverage under the policy; and that on April 19 Mr. Myers would withdraw his appearance. Mr. Hazen withdrew his appearance on April 17, and Mr. Myers withdrew his on April 21. On April 22 new counsel appeared for Gleason. The trial of the tort action began on April 24, verdicts for the plaintiffs were returned on April 28, and the case went to judgment on May 26.

At the close of the evidence counsel for Gleason admitted that the statements furnished by him prior to April 15, 1947, were intentionally false and concerned matters material to and affecting the liability of Gleason to the tort plaintiffs; and that the giving of these statements constituted noncoöperation within the meaning of the motor vehicle liability policy. It was agreed that the only issue for the jury was whether Hardware, by its conduct subsequent to July 15, 1946, when it received the answers of the Coopers and Austin to the interrogatories, and prior to April 7, 1947, had waived its right to disclaim liability.

The defendant introduced in evidence the Coopers' answers to interrogatories, which were in substance that before the automobile struck the pole the husband suddenly got up and asked Gleason where he thought he was going.

1. Counsel for Gleason rightly concedes that he committed a breach of the coöperation clause. Actually, in degree of seriousness, the breach, consisting of an intentional deception as to the facts of liability, was of the grossest kind. *Searls* v. *Standard Accident Ins. Co.* 316 Mass. 606, 609. *Williams* v. *Travelers Ins. Co.* 330 Mass. 476, 479. In support of his contention that there was evidence

of waiver of Hardware's right to have the case prepared in a spirit of truth and honesty Gleason stresses what he calls inconsistencies in his first three statements, and argues that as soon as Austin's answers to interrogatories were received, Hardware, on the strength of those answers, was under a duty to doubt the word of its policyholder and to send him at least a conditional disclaimer promptly, or in any event before the lapse of between eight and nine months.

We think that on the evidence the case should not have been submitted to the jury. The essence of Gleason's contention, which is based on waiver or estoppel (*Phillips* v. *Stone,* 297 Mass. 341, 344, *Salonen* v. *Paanenen,* 320 Mass. 568, 572), is that he had purposely misstated himself into a position where the jury could have found that Hardware had intentionally relinquished its right to require compliance with the terms of the insurance contract.

Gleason's first three statements contained at most only inconsistencies, not unusual in motor tort cases. No intrinsic falsehood was obvious. No known right to disclaim could have been discovered in them alone, nor in the conflicting account appearing for the first time in Austin's answers to interrogatories. It cannot rightly be said that Hardware upon reading those answers then knew that it had sufficient information to warrant a belief that it could safely disclaim. See *Restighini* v. *Hanagan,* 302 Mass. 151, 153; *Sanborn* v. *Brunette,* 315 Mass. 231, 236; *Sweeney* v. *Frew,* 318 Mass. 595, 598–599. The argument seems to go to the extent of making waiver or estoppel an issue of fact in every case where the insurer does not disclaim as soon as there appears a substantial inconsistency between the story of the insured and that of his antagonists in the tort action. In many cases relied upon by Gleason the insurance company remained in charge of the defence until after a verdict of a jury or the finding of a judge. *Daly* v. *Employers Liability Assurance Corp. Ltd.* 269 Mass. 1. *Barbeau* v. *Koljanen,* 299 Mass. 329. *Klefbeck* v. *Dous,* 302 Mass. 383, 387. *Searls* v. *Standard Accident Ins. Co.* 316 Mass. 606. See *Goldberg* v. *Preferred Accident Ins. Co.* 279 Mass. 393, 399.

In the case at bar no prejudice to Gleason appears. To be sure, the decision in the tort case was against him, but on his final statement, which was his first truthful one, he was not entitled to prevail. The total of the damages in favor of the three guests was not large as automobile injury cases go,[1] and on this record it would be idle to speculate how, if at all, the amounts recovered could have been reduced. Gleason was given, and took, the opportunity before trial to acquire able counsel, who have represented him with vigor and skill, even to the unusual extent of three arguments in this court.

He who tried to deceive now asserts that his prevarication must have been so obvious to his intended victim that the latter's omission to insist upon its rights has in turn misled the intended deceiver. But it could not have been fairly inferred that Gleason was lulled into a false sense of security. The cause of any lull was his own deliberate misstatements. Any sense of security he may have had for a time was undeserved and was not induced by the other party to the policy which was performing its obligations under the contract.

Great weight is placed upon the conditional disclaimer of April 7, 1947. It is argued that the inference is that Hardware knew no more then than on July 15, 1946. We do not agree that this inference could be drawn. The disclaimer refers to "Our investigation," which is not an apt phrase to describe doing nothing more than reading answers to interrogatories filed in the case.

2. There remains the contention about the law of the case. Although Gleason argued in his brief in the case reported in 329 Mass. 56 that in that record there was evidence of waiver for the jury, it is clear that we did not intend to pass upon the matter, for we said (page 59), "The only question for determination is whether the judgment in the equity suit made res judicata as between the parties to this action the issues of coverage and waiver by the insurer."

---

[1] The verdicts were for Austin $8,000 and for the Coopers $500 each.

Nevertheless, for present purposes, we accept the contention that the effect of what we there held was by implication to embrace a decision on a question upon which we did not intend to pass. We also agree that the evidence in the present record is substantially the same as that in the case reported in 329 Mass. 56.

The rule of the law of the case is regarded as lying between res judicata and stare decisis. Lummus, The Law of the Case, 9 B. U. L. Rev. 225. Moore and Oglebay, The Supreme Court, Stare Decisis and Law of the Case, 66 N. J. L. J. 421. See *Southern Railway* v. *Clift*, 260 U. S. 316, 319. This court usually declines to reconsider questions decided upon an earlier appeal in the same case. *Peterson* v. *Hopson*, 306 Mass. 597, 599. But this is not because of lack of power. *Peterson* v. *Hopson*, *supra*, 601–603. *Barry* v. *Keeler*, 322 Mass. 114, 125–126. See *Falzone* v. *Burgoyne*, 317 Mass. 493, 497–498. And if we are satisfied that a previous holding in the same case was in error, we have not only the right, but sometimes the duty, to make correction. As Mr. Justice Holmes put it in *Messenger* v. *Anderson*, 225 U. S. 436, 444, "the phrase, law of the case, as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." See *Johnson* v. *Cadillac Motor Car Co.* 261 Fed. 878, 884–886 (C. C. A. 2); *Lebold* v. *Inland Steel Co.* 136 Fed. (2d) 876 (C. C. A. 7); *York* v. *Guaranty Trust Co.* 143 Fed. (2d) 503, 518 (C. C. A. 2).

To apply the rule of the law of the case to the record before us would, in our opinion, lead to injustice, and we decline the opportunity.

Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698, has no present bearing. The provision, "The court need not pass upon questions or issues not argued in the briefs," was made for the purpose of enlightening counsel as to the extent of their own obligation in seeking a decision on a given point, if material. The

rule does not work an estoppel on the court, which remains free to exercise its discretion.

The motion for a directed verdict should have been allowed.

*Exceptions sustained.*
*Judgment for the defendant.*