THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD.
*vs.* ANDREW R. VELLA & others.[1]

Berkshire.    November 6, 1974. — January 17, 1975.

Present: TAURO, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Insurance,* Motor vehicle liability insurance, Insured, Misrepresentation, Disclaimer of liability, Waiver. *Motor Vehicle,* Ownership, Insurance. *Waiver.*

Even if a father, with "intent to deceive," misrepresented to an insurer of an automobile that he owned it, whereas in fact his twenty year old son was the true owner and principal operator, the evidence in a suit in equity by the insurer for declaratory relief did not support a finding that the misrepresentation was material to a policy issued on the basis that the principal operator of the automobile would be a male under twenty-five years of age, and the misrepresentation did not render the policy voidable by the insurer under G. L. c. 175, § 186. [655-656]

Where it appeared that an insurer of an automobile, knowing all of the facts about ownership of the automobile, which the insured had represented he owned, but which in fact was owned by his son, continued to act in a way inconsistent with an intent to disclaim liability and did not give the insured notice of disclaimer for a year and a half, it was held that the insurer lost its right to disclaim. [656-658]

BILL IN EQUITY filed in the Superior Court on July 30, 1968.

The suit was heard by *Quirico, J.*

*Andrew T. Campoli* for the intervener.

*Clement A. Ferris* for the plaintiff.

*Santino C. Cornelio,* for the defendants, joined in a brief.

BRAUCHER, J.   The insurer under a combination motor

---

[1] Gerald M. Vella, and Jane C. Nigrelli, an intervener.

vehicle policy seeks a declaration that it is entitled to disclaim liability, after an accident, on the ground of intentional misrepresentation of ownership by the named insured. The true owner was not the named insured but his twenty-year old son, who lived with his parents. We hold that there was no evidence that the misrepresentation was material and that the insurer lost any right to disclaim by its delay in asserting the right after discovering the facts. We therefore reverse the decree obtained by the insurer and direct the entry of a decree for the insureds.

We summarize first the judge's findings as to matters not in dispute. The son bought a car on or about January 21, 1966, and had it registered and insured in his father's name through the insurer's agent in Pittsfield. The insurance policy provided coverage for "Bodily Injury Liability—Statutory," commonly called "compulsory coverage," in the amount of $5,000 for each person and $10,000 for each accident. It also provided what is commonly known as "guest coverage" in like amounts, "Increased Limits" to the amount of $100,000 for each person and $300,000 for each accident, "Auto Medical Payments" of $500 for each person, and "Property Damage Liability" of $5,000 for each accident. It was written on the basis that the principal operator of the car was to be a male under twenty-five years of age.

Soon the son became dissatisfied with the car, returned it, and received a refund. Thereafter, on February 26, 1966, he went to a car dealer and decided to purchase a second car at an agreed price of $1,500. The salesman told him he would have to have someone over twenty-one years of age buy the car for him, and he brought in his cousin, had the bill of sale made out to the cousin, paid $1,500 in cash, and drove the car home with dealer's registration plates. He went to the insurer's agent and asked that the insurance and registration plates be transferred to the second car. An indorsement to the policy changing the car was issued February 28, 1966, and on or before that date the father executed as owner an application for registration of the second car. Also on February 28, 1966, a policy providing

collision coverage on the second car was issued in the name of the father as owner. About $500 of the funds for the second car came from the son's funds; about $1,000 came from a licensed loan company on a loan to the son as applicant and maker of a note, with the father as comaker.

On December 2, 1966, the second car, with the son driving, was involved in a collision with several other cars, including one owned and operated by Miss Nigrelli, who was allowed to intervene in the present case. The son duly reported the accident to the insurer, and on January 5, 1967, he gave the insurer's investigator a full statement in writing, including the facts as to his purchase of the car. At the investigator's suggestion the son obtained from his cousin a writing, dated January 16, 1967, transferring ownership of the car to the father, and sent the paper to the insurer. The insurer then paid the father the loss under the collision policy and part of that payment was used by the son to pay the balance due on the loan.

Miss Nigrelli began an action in tort for negligence against the father and the son. The defendants in the action were served on March 19, 1967, and the action was entered in the Superior Court on May 1, 1967. The plaintiff in that action filed interrogatories on May 1, 1967, and the defendants signed answers about June 3, 1967. The next step in the action was reference to a conciliator and to an auditor on June 20, 1968. On July 3, 1968, the orders of reference were vacated by the allowance of a motion signed by counsel for the insurer and assented to by counsel for Miss Nigrelli, reciting that "there is a serious question as to the coverage afforded the defendant by the defendant's insurance company." The present suit was filed on July 30, 1968.

The judge also found that the father, when he signed the application for registration of the second car, knew that it was being registered in his name as owner and that he was not the owner. He intended to deceive the insurer in that regard. Evidence (on the part of the father, the son, and an employee of the insurer's agent) that the father contributed to the payments for the car and for the insurance premiums was "not believed." Neither the father nor the cousin had

any interest in the car. Both the son and the father "intentionally misrepresented" to the insurer that the father was the owner of the car in order to induce the insurer to insure the car, and they continued their misrepresentations through their testimony. The representations were material and the insurer relied on them. At some time before July 30, 1968, there was some communication between the insurer and the father and son about the insurer's contention that it was not liable by reason of misrepresentation as to ownership. The insurer, therefore, was entitled to disclaim liability on all but the compulsory coverage, and it acted within a reasonable time. There was no waiver or estoppel. The rights of Miss Nigrelli as intervener stood no higher than those of the father and son; her recovery against the insurer therefore was limited to $5,000 for personal injuries. It was unnecessary to decide whether the insurer could disclaim liability on the noncompulsory coverage on the ground of noncoöperation of the insured.

A final decree was entered in accordance with the findings. The father and son moved for a new trial on the ground that the attorney engaged by the insurer to represent them in the tort action also represented the insurer in this suit against them. The motion was denied, and the father and son and Miss Nigrelli appeal both from the final decree and from the denial of the motion for a new trial. The case was transferred to this court from the Appeals Court pursuant to G. L. c. 211A, § 10 (B).

1. *Intent.*    The father and son and the intervener rely on G. L. c. 175, § 186,[2] and *Jertson* v. *Hartley,* 342 Mass. 597, 602 (1961). In the *Jertson* case, on facts very similar to those of the present case, we said, "The intentional furnishing of false information of a material nature either before or at trial is a breach of the coöperation clause. . . . It could be

---

[2] "No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

found that the statements were not made with an intention to deceive but were due to their ignorance of what might be the legal consequences of their acts." The same inference might have been drawn from the evidence in the present case, but it was not. Cf. *Williams* v. *Travelers Ins. Co.* 330 Mass. 476, 479 (1953); *Cassidy* v. *Liberty Mut. Ins. Co.* 338 Mass. 139, 142 (1958). The decree appealed from provides, in the words of the statute, that the misrepresentation of the father was made "with actual intent to deceive" the insurer. Unless that finding is plainly wrong, we should not disturb it. In the view we take of the other issues in the case, we do not consider whether it is plainly wrong.

2. *Materiality.* Even if there is "actual intent to deceive," the policy is voidable for misrepresentation only if the fact represented is material. *Sullivan* v. *John Hancock Mut. Life Ins. Co.* 342 Mass. 649, 658 (1961). A fact "must be regarded as material, the knowledge or ignorance of which would naturally influence the judgment of the underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of the premium." *Daniels* v. *Hudson River Fire Ins. Co.* 12 Cush. 416, 425 (1853). The judge found that the misrepresentations of the father and son "were of a material fact in the application for, and negotiation of the liability policy in question." Neither the judge's findings nor the insurer's brief, however, gives any hint of a way in which it could make any difference to the insurer whether the car belonged to the father or to the son, so long as the son was the principal operator.

We have searched the testimony for some basis for the judge's finding, and have found none. An employee of the insurer's agent was called as a witness by the insurer and testified that the father had been a customer of the insurer's agent for ten or fifteen years, and that she knew and recognized the father and the son and knew they lived together. She testified that "if a father had a son under twenty-five and wanted to register it, we would tell him it would be better if he bought the car and registered it in his name. He would have more control on the car." Apparently

a bill of sale to the father would have satisfied her, as it later satisfied the insurer's investigator. But we do not understand how a bill of sale in the father's name would have given him any more control than did the registration in his name.

The insurer was on notice, as we all are, that in family groups living together in harmony property arrangements are often informal and ambiguous. See, e.g., *Robinson* v. *Robinson, ante,* 582, 588 (1974). There must be a great many families in which it is not clear who "really" owns which car. If the insurer is correct in its contention in this case, it is free, whenever a loss occurs, to search out such ambiguities, trace whose earnings were used and which of two comakers of a note was the real borrower, and litigate questions of intra-family ownership for years, delaying the while the day when it must pay a tort judgment. The prospect is not attractive. We think in such a case the insurer must at least show that it had some legitimate concern with the ownership question it raises. Cf. *Lombardi* v. *Lumbermens Mut. Cas. Co.* 361 Mass. 310, 311-312 (1972). There was no evidence here that the son sought to conceal his age or to avoid increased premium rates or limitations of coverage. Cf. *Didlake* v. *Standard Ins. Co.* 195 F. 2d 247, 251 (10th Cir. 1952); *Western States Mut. Auto. Ins. Co.* v. *May,* 18 Ill. App. 2d 442, 448 (1958); *Peil* v. *Kohnke,* 50 Wis. 2d 168, 199 (1971). We think the finding that the "fact" represented was material was without support in the evidence. Cf. *Western Cas. & Sur. Co.* v. *Herman,* 318 F. 2d 50, 55 (8th Cir. 1963); *Standard Acc. Ins. Co.* v. *Starks,* 351 F. 2d 895, 896-897 (6th Cir. 1965); *Industrial Indem. Co.* v. *United States Fid. & Guar. Cos.* 93 Idaho 59, 62-63 (1969); *Scott* v. *State Farm Mut. Auto. Ins. Co.* 202 Va. 579, 584 (1961).

3. *Promptness of disclaimer.* On January 5, 1967, when the son made his written report to the insurer's investigator, the insurer knew in substance all that it now knows about the ownership of the car. Thereafter the insurer paid the collision loss to the father as owner of the car and retained counsel for the father and son. So far as

appears from the record, the same attorney continues to represent them in the tort action, the insurer still retains about $125 in premium for coverages it now claims were never in force, and no notice of reservation of rights or disclaimer was given until this suit was begun on July 30, 1968, a year and a half after the insurer discovered the facts.

The only testimony as to when the insureds learned that the insurance company was not going to pay is set forth in the margin.[3] That testimony does not support the judge's finding that the matter was discussed at some time before this suit was begun on July 30, 1968.

Where an insurer gives the insured notice of disclaimer of liability as soon as possible after it learns of the ground therefor, it may continue to defend the action against the insured, at least if the insured acquiesces. *Salonen* v. *Paananen,* 320 Mass. 568, 572-575 (1947). Where an insurer has received conflicting information, we have upheld delay in disclaimer until the conflict was resolved. *Sanborn* v. *Brunette,* 315 Mass. 231, 236-237 (1943). *Sweeney* v. *Frew,* 318 Mass. 595, 598-599 (1945). *Gleason* v. *Hardware Mut. Cas. Co.* 331 Mass. 703, 708-709 (1954). But if the insurer knows of its right to disclaim and exercises dominion over the case at an important point without disclaiming liability or reserving rights, subsequent disclaimer is barred. *Rose* v. *Regan,* 344 Mass. 223, 227-229 (1962).

In the present case, any misrepresentation related more to the legal consequence of the acts of the insureds than to the acts themselves. Cf. *Jertson* v. *Hartley,* 342 Mass. 597, 602 (1961). It could not be said, as was said in *Sanborn* v. *Brunette,* 315 Mass. 231, 236 (1943), "Whether the company could successfully disclaim depended upon the story that . . . [the insureds] would definitely adhere to at the

---

[3] Cross-examination of the son by counsel for the defendants:

Q. "Did you ever receive any communication from anybody on behalf of the company, either through the agent, the company, or its attorney, that they were not going to honor this coverage under this policy?" A. "Not for quite a while after I received the summons from Miss Nigrelli, I received an — I don't know, five, six, seven months after the accident, I received a notice, I believe from Superior Court, that the insurance company wasn't going to cover." Q. "When they brought that law suit, was that the first time you were ever apprised that there was any question about their coverage?" A. "Yes."

trial." In situations like the present one, we think the insurer loses its right to disclaim when it knows the facts, fails to disclaim within a reasonable time, and acts in a way inconsistent with an intention to disclaim. *Merchants Indem. Corp.* v. *Eggleston,* 37 N. J. 114, 130-132 (1962). Cf. *Western Cas. & Sur. Co.* v. *Herman,* 318 F. 2d 50, 55-56 (8th Cir. 1963); *Industrial Indem. Co.* v. *United States Fid. & Guar. Cos.* 93 Idaho 59, 63 (1969); *Allstate Ins. Co.* v. *Keller,* 17 Ill. App. 2d 44, 50-51 (1958). See Restatement: Contracts, §§ 483, 484 (1932); Williston, Contracts, § 1527 (3d ed. 1970); Appleman, Insurance Law and Practice, § 9254 (1968). The delay here was too great, and any right to disclaim was lost.

In arriving at this conclusion, we do not take into account the insureds' contention that there was a conflict of interest on the part of counsel. Cf. *Allstate Ins. Co.* v. *Keller,* 17 Ill. App. 2d 44, 52-53 (1958). The record does not show that counsel was aware of the conflict for any substantial period of time before he notified the insureds.

4. *Disposition.* The final decree is reversed, and the case is remanded to the Superior Court. A new final decree is to be entered declaring that the insurer has no right to disclaim liability under the policy and indorsement issued by it. The appeal from the denial of a motion for a new trial is treated as waived. The defendants and intervener are to have costs of appeal.

*So ordered.*