Eli Packard vs. Thomas H. Pratt & another.

Suffolk. March 30. — July 28, 1874. Colt, J., absent.

In an action for deceit the declaration alleged that the plaintiff was induced by false and fraudulent representations of the defendant to purchase the stock, fixtures and good will of his business. To prove the purchase the plaintiff put in evidence a written instrument in the form of a lease, whereby the defendant leased to him his interest in the business, fixtures and furniture for six months, the plaintiff agreeing to pay in instalments during this period, and by which the defendant agreed " that provided the said lessee completes the term of this indenture, to redeem and annul this indenture at the expiration of six months, or the said lessee at the expiration of six months repossess the same as his own property with any further cost from said lessor." *Held*, that there was no variance.

Tort for deceit against Thomas H. Pratt and W. A. Weaver. The declaration alleged in substance that on or about December 27, 1872, at Boston, the defendant Pratt being engaged in business styled by himself the " Commercial and Business Exchange," and having offered to sell out one half of the stock, fixtures and good will of his said business to the plaintiff, the defendants did with intent to deceive and defraud the plaintiff, falsely and fraudulently represent to him that the said business as theretofore conducted by the defendant Pratt was a splendid chance for any one that wanted a first class and permanent business, that it would bear the closest investigation, that it was a profitable business, and that the net profits thereof realized by the defendant Pratt for the year last past had been three thousand dollars ; that the plaintiff relying on said representations purchased of the defendant Pratt one half the stock, fixtures and good will of said business, and paid him therefor the sum of one hundred and sixty dollars. The declaration then alleged the falsity of the representations, that the defendants knew that they were false, a tender to the defendant Pratt of the stock and fixtures, and that the plaintiff disclaimed any interest in them.

Trial in the Superior Court, before *Rockwell*, J., who, after verdict for the defendants, reported the case to this court as follows :

The pleadings are referred to as part of this report ; also, the written lease, hereinafter mentioned. The plaintiff testified, the defendants' counsel objecting, that, in consequence of directions

before received by him, he went to room No. 1, in the building No. 593 Washington Street, Boston, said room being up one flight of stairs, and there found both defendants; and that then and there the defendant Pratt, in presence of the defendant Weaver, told the plaintiff that their business was profitable, and that he, Pratt, had received three thousand dollars as net profits from the business the last year; that they had done business to the amount of eight or ten thousand dollars together; that he, Pratt, had made three thousand dollars last year from the business; that he would sell out his part to the plaintiff and do well by him; that the plaintiff replied that he did not know that he could buy such a business; that he had not money to buy such a business. Pratt said he would sell out cheap, and give the plaintiff a chance to make money, as he, Pratt, was going away to New York, and wanted to sell out; that the plaintiff replied that it would be of no use, as the plaintiff had not money enough to buy him out; that the defendant Weaver then said, that perhaps if the plaintiff had only money enough to pay in part, Pratt would wait for the other part; that he, Weaver, liked the looks of the plaintiff, and that the plaintiff would be the very man he, Weaver, wanted. Pratt said that if the plaintiff would pay him what money the plaintiff had, he, Pratt, would sell him his part; that the plaintiff told Pratt, that he, the plaintiff, didn't know about the business, didn't know as it would suit him, didn't know as he could learn it; that Pratt replied that the business was not much to learn, and that Weaver could show it to the plaintiff readily; that the plaintiff told Pratt he would take the business at their price, which was seven hundred and fifty dollars; that Pratt asked the plaintiff how much money he had, and the plaintiff told him he had one hundred and sixty dollars; and Weaver said he thought that would do for the first payment, and for the remainder, the plaintiff could give the money to him as it came in, and he, Weaver, could send it to Pratt; that one of them said there was no need of going out to make a paper; that they could make one out as well; that Weaver sat down and wrote the paper; * that Pratt

* The instrument in question was in form a lease by Pratt to the plaintiff of "all my right, title and interest in the real estate and brokerage business, together with fixtures and furniture " at 593 Washington Street, Boston, for the term of six months, paying the rent or sum of $750 ($160 in advance) by equal

and the plaintiff signed it, and that either that day or the next day the plaintiff paid one hundred and sixty dollars to Pratt in Weaver's presence, in the same room, No. 1 ; that the paper was made out in duplicate ; that Pratt took one, and the plaintiff the other ; that after that, the plaintiff went to the said room every day, for about a week, and spent his time there ; that Pratt used to come in there about once a day, and Weaver was there, generally, from ten to five o'clock ; that no business came ; men came with cards, and one man inquired for Pratt & Weaver ; that the plaintiff stayed there six or seven days, in this way ; that the last day or next to the last day, a young man came in, with one of those business cards of Pratt & Weaver ; that Weaver went out with that young man and met Pratt outside the door, there being a thin board partition ; that he told them he was sent there for a chance as collector, and he should like the situation ; that they asked if he had references ; that he said he had ; that they asked if he had two or three hundred dollars to deposit ; that he said he didn't know it was required ; that Pratt told him it was the money he was after, not a reference.    The plaintiff also testified that Weaver told him at the end of the week or at the end of six or seven days, that the rent had got to be paid, or that they had got to leave the room ; that he, the plaintiff, then went to Pratt, and asked for his money, namely, the one hundred and sixty dollars, or a portion of it ; that Pratt replied he had no money, and if he had, he could not give it back to him or would not ; that he, the plaintiff, came out and told his story to the chief of police ; that Pratt did not go to New York ; but that he went to 29 Boylston Street, Boston, and told the plaintiff he went to sell out an employment office.

The plaintiff stated on cross-examination, that the duplicate leases were executed together ; that George Norris came in the next day, or two or three days after, and signed both as witness ; that he went to Pratt and asked for the money, one hundred and

weekly payments of $22.69 at the expiration of each week.   The instrument also contained the following clause : "And said lessor agrees that provided the said lessee completes the term of this indenture to redeem and annul this indenture at the expiration of six months, or the said lessee at the expiration of six months repossess the same as his own property with any further cost from said lessor."

sixty dollars, or.a part of it, but never offered to return anything. The plaintiff also introduced as a witness, Harrison O. Read, a police officer, who testified that he knew Pratt & Weaver, at 593 Washington Street aforesaid ; that he had no knowledge of any business they had except selling out their business ; that six or seven persons came to make complaints at the police office ; that he never knew of their having any commercial or brokerage business whatever ; that they came to this room not more than three or four months before Packard came to the office to complain ; that when he told Pratt of the complaints, he said he did nothing but fair business transactions.  In their room, he testified, there was a desk, a table, and some chairs, but nothing else that he saw ; and that he thought Pratt and Weaver were associated in whatever was done there.  He also testified, on cross-examination, that he never saw the defendants together after the plaintiff had paid Pratt the one hundred and sixty dollars.  The duplicate lease was put in by the plaintiff.  This was all the evidence.  The defendants' counsel, having objected to the evidence, especially on the ground of variance, and inapplicability of the evidence to the case set forth in the declaration, now insisted that upon the pleadings and evidence, the plaintiff's case could not be sustained.  The court being of that opinion, suggested to the counsel for the plaintiff that the declaration might be so amended as to obviate the objections to the maintenance of the action.  But as no amendment was proposed, the court ruled that upon the pleadings and evidence, the action could not be sustained ; and by direction, the jury returned a verdict for the defendants.  If the above ruling, to which the plaintiff objected and excepted, is correct, the verdict is to stand, otherwise a new trial is to be ordered ; or, the case is to be disposed of as the Supreme Judicial Court shall direct.

*W. H. Towne*, for the plaintiff.

*J. L. Eldridge*, for the defendants.  The court rightly directed a verdict for the defendants, because the declaration alleged a sale or purchase, while the evidence tended to show a lease, and not a sale.  The allegation of a sale was descriptive of the identity of that which was legally essential to the plaintiff's claim.  It was not a formal allegation.  If we strike out from the declaration the word " purchased," it would set forth no cause of action.

ENDICOTT, J. We think there was evidence of fraud, offered by the plaintiff, sufficient to sustain an action on a proper declaration. The precise variance between the declaration and the proof, which led the learned judge to order a verdict for the defendants, does not appear by the report. But it does appear in terms, that he suggested to the plaintiff's counsel that the variance might be obviated by an amendment. In the argument submitted by the defendants' counsel, the only variance relied on, which an amendment could cure, was, that the declaration alleged a sale or purchase of Pratt's interest in the business, while the evidence tended to show a lease and not a sale. The only question for decision therefore is, whether the paper put in evidence, purporting to be a lease should have been set forth in the declaration, and whether it is so far material that by omitting to do so, there is such a variance between the allegations and the proof that the defendants are entitled to a verdict. We do not think there is such a variance. The gist of the action is the fraud and deceit of the defendants, by means of false and fraudulent representations, and the consequent damage to the plaintiff, and not the particular form of the contract entered into by the parties. If by false and fraudulent representations upon which he relied, the plaintiff was persuaded to part with his money to obtain an interest in the pretended business, the precise manner in which the interest was to be secured to him is not so far material that it must be set forth in the declaration. Whether by bill of sale or by lease, it was in substance the purchase of an interest in the business, and if there was fraud there was no contract between the parties.

The writing itself is certainly peculiar, and though in form a lease of a business for six months, it contains a provision, the substance of which is, that upon the payment of the stipulated rent Pratt's interest in the business may pass absolutely to the lessee. In one aspect it is a lease, in another a bill of sale conditional upon the full payment of the sum agreed upon. Its precise legal character, it is not necessary to consider ; it was competent, as part of the transaction alleged to be fraudulent, and does not furnish evidence of a transaction or bargain, so different from that alleged, as to constitute a fatal variance.

The other questions argued do not fall within the ruling of the presiding judge and we have not considered them.

*New trial ordered.*