- Harry Sandler *vs.* Bernard S. Elliott
(and a companion case[1]).

Suffolk.    November 5, 1956, February 26, 1957. — March 21, 1957.

Present: Wilkins, C.J., Ronan, Counihan, Whittemore, & Cutter, JJ.

*Deceit. Damages*, For tort, For deceit. *Practice, Civil*, Variance; Leave
reserved; Exceptions: what questions open; New trial; Amendment.
*Pleading, Civil*, Declaration. *Sale*, Parties.

In an action of tort for deceit by the purchaser of a franchise for the sale
of coin operated radios, a finding for the plaintiff was warranted by
evidence that in preliminary negotiations leading up to the purchase
the defendant knowingly and falsely represented that he had up to
seven contracts for the installation of radios in important hotels and
that the plaintiff could have radios within two or three weeks or a
month, whereas in fact the defendant had contracts with no more
than two small hotels and knew that the expected delivery time of
radios was four months, that the defendant intended the plaintiff to
rely on his representations as an inducement to enter into the trans-
action and knew the plaintiff did rely on them, and that the plaintiff
made the purchase as a result of the representations and was damaged
substantially in that the franchise was in fact worth much less than it
would have been worth had the representations been true. [578–581]
Upon an exception of the plaintiff in an action to the setting aside of a
verdict for him and the entry of a verdict for the defendant under
leave reserved, a question of variance between the allegations of the
declaration and the evidence at the trial was open to the defendant.
[581–582]
In an action for deceit by one of two brothers against an individual in
which the declaration alleged that the defendant by false representa-
tions induced the plaintiff to buy a franchise from the defendant, the
allegation in the declaration that the defendant was the seller of the
franchise and the omission therein of any reference to a corporation
which the evidence showed was the seller, and the omission in the
declaration of anything to the effect that the plaintiff's brother was
a "purchaser" whereas the evidence showed that he as well as the
plaintiff signed the contract of sale, did not, in the circumstances,
result in material variances prejudicial to the defendant where nothing
turned on whether the defendant or the corporation was the seller and

---

[1] The companion case was brought by the same plaintiff against Israel
Jacobs.

there was evidence that as between the plaintiff and his brother the plaintiff acquired the sole beneficial interest in the franchise. [582–588]

Actual damage sufficient to support an action for deceit was stated by allegations in the declaration that the plaintiff by reason of false representations of the defendant with respect to a franchise for the sale and installation of coin operated radios purchased the franchise but was unable to make sales or installations because of the nonexistence of certain factors represented by the defendant to be existent. [578, 583]

Deceit inducing the making of a contract is not merged in the contract. [586]

After a rescript from this court sustaining exceptions of the plaintiff to the setting aside of a verdict for him and the entry of a verdict for the defendant under leave reserved and ordering judgment to be entered on the verdict for the plaintiff subject to action in the Superior Court, if any, respecting a motion by the defendant in that court for a new trial, which had been denied, that court would have power to reconsider its denial of the motion. [588, 591]

This court, upon determining that there was no fatal variance between the declaration and the proof in an action and that an amendment of the declaration as sought by the plaintiff by a motion filed in this court was not essential, and upon sustaining exceptions of the plaintiff to the setting aside of a verdict in his favor and entry of a verdict for the defendant under leave reserved, denied the motion to amend without prejudice to its presentation in the Superior Court in the event a new trial should be ordered in that court after rescript. [589, 591]

A verdict for the plaintiff was not warranted in an action for deceit where the evidence did not show that the defendant himself made any material misrepresentation to the plaintiff or that, if the defendant heard statements made by a third person to the plaintiff, the defendant knew or should have known that they were not true and was under a duty to the plaintiff to correct them, or that the defendant was in a partnership or joint enterprise with the third person. [590]

Two ACTIONS OF TORT. Writs in the Superior Court dated November 26, 1947.

The actions were tried before *Dowd*, J.

*Stanley H. Rudman*, (*Norman N. Goldberg* with him,) for the plaintiff.

*Lawrence R. Cohen*, (*Albert R. Mezoff* with him,) for the defendant Elliott.

WHITTEMORE, J. These are two actions of tort for deceit. There was a verdict for the plaintiff in each case which the trial judge set aside pursuant to leave reserved. The plaintiff duly excepted in each case. The declarations were

in substance identical. The defendant Elliott contends both that the evidence was insufficient to support the verdict and that there was a material variance.

## I. THE CASE AGAINST ELLIOTT.

1. We consider first the action in which Bernard S. Elliott is the defendant. The substitute declaration was filed just before trial. It averred, in part, that "the defendant by fraudulently representing to the plaintiff . . . that he had contracts with all leading hotels and inns in Massachusetts for the installation of . . . 'coin operated radios' . . . [and] that he would furnish 'coin operated radio' . . . which could be operated on either D C or A C electrical current . . . induced the plaintiff to buy *from the defendant* the franchise . . . in Massachusetts for $10,000, $5,000 in cash and an additional $5 to be paid on each radio installed . . . [up to one thousand]; that the plaintiff, relying on the fraudulent representations of the defendant, who knew of their falsity, paid *to the defendant* $6,948.75; . . . that *the defendant* did not have [installation] contracts with all leading hotels in Massachusetts . . . and the plaintiff was unable to make sales . . . ; that *the defendant* did not and was not able to furnish 'coin operated radio' which could be operated on D C electric current, wherefore plaintiff was unable to make installations . . . ; that the defendant intended to deceive the plaintiff . . . and did . . . [so]. Wherefore, the plaintiff claims damages as in his writ alleged" (emphasis added).

The evidence was such as to permit the jury to find a case made out under these allegations except that the franchise was in fact purchased from a corporation in circumstances hereinafter stated.

The jury could have found, inter alia, as follows: The defendant in preliminary negotiations falsely and with knowledge of the falsity represented (1) that he had up to seven contracts for the installation of instruments called Tradios, which were coin operated radios, in hotels, including "Shera-

ton Hotels" and important hotels that used direct current, although in fact he had contracts with no more than two of the smaller hotels among those which had been mentioned, and (2) that the plaintiff could have D. C. sets within two or three weeks or a month although he knew that expected delivery time was four months. The plaintiff, on July 2, 1946, went with his brother Hyman and the plaintiff's attorney, Mr. Gack, to sign the contract covering the purchase of the franchise and instruments. The document offered for signature showed, as the seller of the franchise, Elliott Enterprises, Inc., a corporation in which the defendant Elliott and the defendant in the companion action, Jacobs, were the sole stockholders and of which Elliott was the treasurer and Jacobs the president. The plaintiff had not before heard of the corporation and when the plaintiff said that he thought he was doing business with Elliott the latter said that "that [the corporation] is the name I go under in business, but you are doing business with me. You trust in me and I will do right by you. I will see to everything." The contract had been drawn in contemplation that the plaintiff would be the "purchaser" under it; it referred to $1,000 which had been theretofore paid by "one Hyman Sandler" (the plaintiff's brother) for an exclusive franchise for Essex County and stated that "said agreement . . . is to be set aside and cancelled by mutual agreement and in consideration of these presents, it is therefore now agreed that the aforesaid one thousand ($1,000.00) dollars shall be applied to the credit of the purchaser herein . . . ." The brother Hyman signed the contract on July 2, as did the plaintiff, the brother doing so to give the plaintiff the benefit of the $1,000, having some time before had an arrangement with the plaintiff about that. At some time, which could have been after the contract was signed, the names "Hy and Harry Sandler" were inserted in the blank left to describe the "purchaser" and before the contract was signed Mr. Gack caused to be added thereto, in long hand, the words "Whenever the word purchaser appears it shall be construed as purchaser *their* assigns, heirs and

administrators and executors" (emphasis added). The plaintiff's brother was not "a partner of his in this transaction" at least in the factual contemplation of the Sandlers. The plaintiff paid up to $5,795[1] on account of the purchase price of the franchise and $10,000, more or less for instruments.

We do not agree with the defendant that there was insufficient evidence of reliance. The plaintiff testified that he signed the contract as the result of what the defendant said to him. The defendant testified that he intended that the plaintiff should rely on whatever statements he made prior to July 2, and that they should be an inducement to the plaintiff to sign a contract, that he was aware that the plaintiff did rely on them, and that the plaintiff told him that he did. This was evidence of reliance. It is not necessary to show that the misrepresentations were the sole or even the predominant factors in the plaintiff's decision to take the franchise. *National Shawmut Bank* v. *Johnson*, 317 Mass. 485, 490. The plaintiff would not be barred even if he had not been diligent to verify in his own interest or because he employed an attorney to attend the conference at which the contract was settled. *Yorke* v. *Taylor*, 332 Mass. 368, 370, 373–374. The omission of the plaintiff to ask that the relied on representations be included in the contract was evidence of nonreliance; it does not establish nonreliance as a matter of law.

The bill of exceptions shows evidence from which the jury could have found that the plaintiff was damaged. The. evidence permitted the jury to find that as between the plaintiff and his brother the plaintiff alone had all the beneficial interests of the "purchaser" under the contract even if the brother, legally, was also a "purchaser" and hence bound to the corporation on the obligations of the contract. The jury could have found that the franchise, if supported by existing installation contracts and the availability within two or three weeks of direct current instruments, as repre-

---

[1] It is not clear from the bill of exceptions whether this was additional to the credit of the brother's $1,000.

sented, would have been worth the contract price of $10,000 and that, without these concomitants, it was worth much less than this. They could have found that the plaintiff would not be able to get expected orders, and hence would give Elliott Enterprises, Inc., little business and the latter would shortly lose its underlying contract so that there would be no source of instruments to supply the plaintiff's orders. The jury could have found that it was implicit in the actual state of affairs on July 2 that, because of the non-existence of the misrepresented facts, the plaintiff would not enjoy the franchise for a long enough period to establish a business from which he would get any substantial return on his investment. See *Whiting* v. *Price*, 172 Mass. 240, 242–243. There was therefore evidence from which damages could be found in a substantial amount, perhaps up to the full amount of the plaintiff's payments for the franchise. *Piper* v. *Childs*, 290 Mass. 560, 562. *Bellefeuille* v. *Medeiros*, *ante*, 262, 265–266.

The bill of exceptions does not enable us to determine whether the statement therein that the plaintiff "testified further with regard to some of the financial losses suffered by him in this transaction" refers to testimony which would support the verdict in the much larger sum of $10,500. That is not material on the issue of whether the case should have gone to the jury.

2. The variance point is open to the defendant whether or not the motion for a directed verdict specified the variance.[1] Where such a motion is allowed, or, as here, a verdict for the plaintiff is set aside under leave reserved (*Brightman* v. *Blanchette*, 307 Mass. 584, 589; *Berwick & Smith Co.* v. *Salem Press, Inc.* 331 Mass. 196, 197), we "take it that the ruling of the judge was made with the declaration before him and in view of its averments." *Brasslavsky* v. *Boston Elevated Railway*, 250 Mass. 403, 404. *Glynn* v. *Blomerth*, 312 Mass. 299, 302. *Zarski* v. *Creamer*, 317 Mass.

---

[1] The record discloses only that the "motion [was] for a directed verdict"; the supplementary brief of the plaintiff, however, states that the defendant's motion did refer to the pleadings.

744, 747. Cases like *Leigh* v. *Rule,* 331 Mass. 664, on which the plaintiff relies to support his contention that the variance point is not open on the bill of exceptions, are cases where the trial judge denied the motion for a directed verdict. In such cases, if the evidence is sufficient in any legal form of declaring to justify a finding for the plaintiff, an exception to the denial of a motion for a directed verdict not based on the pleadings' will not be sustained. *Ibid.,* 667–668.

The defendant contends that the specification of the defendant as the seller of the franchise and the omission of a reference to the corporation were material in respect of stating the cause of action. We disagree. Nothing turned on the fact that the plaintiff's franchise rights came from the corporation rather than the defendant. The cause of action is the same. *Packard* v. *Pratt,* 115 Mass. 405. The rule of damages is the same. *Nash* v. *Minnesota Title Ins. & Trust Co.* 163 Mass. 574, 582. *Kerr* v. *Shurtleff,* 218 Mass. 167, 172–173. *Anderson* v. *Rubin,* 286 Mass. 361, 363. See Hannigan, The Measure of Damages in Tort for Deceit, 18 B. U. L. Rev. 681, 684–685. In this respect the declaration would have stated all that was necessary if it had merely averred that the false representations "induced the plaintiff to buy . . . the franchise," or if it had averred that the purchase was from, and the payment was to, "the defendant or a corporation in which he was interested."

The omission to allege, or, through reference to the contract, show, that the brother was a "purchaser" under it does not make the cause different from that proved. The suit is not for damage to joint property (the contract) or for joint loss or for the brother's loss; it is for the loss caused to this plaintiff only. The brother is not concerned in the cause of action for that separate tort. *Baker* v. *Jewell,* 6 Mass. 460, 462. See *Thomson* v. *Pentecost,* 210 Mass. 223, 228. Compare *Medbury* v. *Watson,* 6 Met. 246, 257. The plaintiff, as alleged, did "buy . . . the franchise"; that the brother had become a "purchaser" also in order to assume obligations to the corporation under the contract, did

not make this legally untrue even if the brother also had acquired a legal title to the franchise. If the evidence supporting the view that the plaintiff had the sole beneficial interest is accepted, it was a substantively correct allegation as a matter of fact without qualification.

The declaration sufficiently states that damage resulted from the particular misrepresentations which were made out in the evidence. See *Kilroy* v. *Barron*, 326 Mass. 464, 466. It is immaterial that misrepresentations were averred in addition to those proved.

The defendant knew from the declaration not only what the cause of action was but also all the facts of the cause of action which he needed to know to "be able to plead to it intelligently and directly." See *Glynn* v. *Blomerth*, 312 Mass. 299, 301–302. In actions of negligence the place of the fall (*Cavanaugh* v. *Crocker, post*, 765) or the cause of the fall (such as an unnatural accumulation of snow or ice as in *Glynn* v. *Blomerth*) are parts of the particular cause of action which the defendant needs to know in order to plead thereto and such cases are distinguishable.

We think therefore that unless the reference to Elliott as the seller or the omission of the reference to the corporation or the contract (and hence to the brother) could in some way be prejudicial to the defendant, the declaration can be judged as it would be without either reference. See *Simmons* v. *Lawrence Duck Co.* 133 Mass. 298; *Newton Construction Co.* v. *West & South Water Supply District of Acton*, 326 Mass. 171, 175; *Mitchell* v. *Lonergan*, 285 Mass. 266, 271. The use of the first person in speaking of rights actually in the corporation is not by itself very significant. Persons dominant in a corporation often speak thus in respect of corporate property and undertakings. If the representations had been true as applied to the corporation the plaintiff of course would have had no basis of complaint.

In *Packard* v. *Pratt*, 115 Mass. 405, we reversed the action of the trial judge in allowing a motion for a directed verdict after the plaintiff had declined an opportunity to amend. The declaration alleged fraudulent representations

inducing a purchase of a business while the evidence tended to show a lease and not a sale. In holding that there was no "fatal variance" and that it was not required that the paper purporting to be a lease be set out we said (page 409), "The gist of the action is the fraud and deceit of the defendants, by means of false and fraudulent representations, and the consequent damage to the plaintiff, and not the particular form of the contract entered into by the parties. If by false and fraudulent representations upon which he relied, the plaintiff was persuaded to part with his money to obtain an interest in the pretended business, the precise manner in which the interest was to be secured to him is not so far material that it must be set forth in the declaration." Distinguishing but not controlling features are that in one aspect the lease in the *Packard* case could be deemed a bill of sale conditional upon payment of the stipulated rent, and that here the declaration affirmatively misstated the seller of the franchise to be the defendant. See also *Reeve* v. *Dennett*, 145 Mass. 23, 31–32.

In *Kabatchnick* v. *Hanover-Elm Building Corp.* 331 Mass. 366, an action in tort for deceit, there was an assertion of variance in the motion to direct a verdict, in that the declaration averred that the defendants were coöwners while the evidence showed that one defendant was the owner. We dealt with the case as one "where the plaintiff has made out a case but not the case alleged" (page 374). But in that case there was prejudice in respect of the number of challenges available to the defendants, and the defendants' exceptions were to be sustained on that ground, so that the case would stand for a new trial in any event. That case does not show that we must rule here that there was a fatal variance in the absence of prejudice.

3. The defendant, to show prejudice, contends in effect, as we understand it, that even though he must have known exactly what facts the plaintiff was talking about, the declaration gave notice that the plaintiff would take a position in regard to these facts different from that which was taken at the trial and which, reasonably, the defendant was

not prepared to meet. The defendant specifies that he did not call Mr. Gack, suggesting that the need of this possible witness developed for the first time when the plaintiff's theory of the case on the facts was known at the trial. The point is made in respect of the plaintiff's argument that one of the ways in which the defendant fraudulently deceived the plaintiff was in telling the plaintiff on July 2, 1946, that the corporation was the name he went under "but you are doing business with me. You trust in me and I will do right by you. I will see to everything." The defendant says Mr. Gack could have negatived this statement and was needed to meet it. There is nothing in the contention of either party in respect of this. The declaration said nothing about this as a misrepresentation relied on and it is not implicit in what is expressly charged. Furthermore the evidence is insufficient to support recovery on it in an action for deceit. This evidence, we think, shows only an oral promise to be bound by the terms of a contract made, ostensibly, with a corporation. See *Galotti* v. *United States Trust Co., ante,* 496, 501. There was no occasion to meet the attempt to show fraud in this way if made at the trial, otherwise than by objection and requests for instruction that the declaration did not permit the contention and the evidence did not sustain it.

Perhaps what the defendant has in mind is indicated by the statement in his brief that his counsel "were justified in assuming that the introduction of this document [the contract] would constitute a solid defence to the plaintiff's case." That assumption was not justified for reasons set forth in this opinion. The defendant did not act on such assumption but joined in the trial of the issues. That the defendant does not, as he hoped he might, escape proved liability because of a nonessential variance is not prejudice.

If, as the defendant suggests, Mr. Gack would have been a valuable witness on the issue of reliance, there was nothing in the declaration to indicate that he should not be called. The declaration put the defendant on notice to assemble his witnesses on the issue of reliance.

. The parol evidence rule, if applicable as a defence to fraud, would have become so when the contract went in evidence regardless of the form of the declaration. The rule, however, does not avail the defendant here; fraud if established is not merged in the contract. *New England Foundation Co. Inc.* v. *Elliott & Watrous, Inc.* 306 Mass. 177, 181–182. *Bates* v. *Southgate,* 308 Mass. 170. *Moran* v. *Levin,* 318 Mass. 770, 774.

There is nothing in the contention that because the contract was not shown in the declaration the defendant could not charge the plaintiff with knowledge of the contents of the earlier contract between his joint contractor Hyman Sandler and the corporation, as well as with any knowledge which Hyman Sandler had in the premises. The contract with Hyman Sandler, dated June 21, 1946, was admitted in evidence; there is nothing in it which negatives the force of the misrepresentations made by the defendant to the plaintiff. Without pausing to appraise the correctness of the proposition that in law, because they both were parties to the July 2 contract, what Hyman knew Harry also knew, we note that the facts relied on to support it were in evidence and that its soundness would depend on the fact of the relationship and not on who was the plaintiff or whether the declaration referred to the contract. Furthermore the plaintiff testified that in the preliminary negotiations his brother was acting for him.[1] This could have been a basis for charging the plaintiff with at least any knowledge Hyman Sandler acquired in the preliminary negotiations which negatived the misrepresentations. The fact is significant that the defendant, so far as appears, made no effort to explore this in cross-examination of Hyman Sandler who corroborated that it was he who "interested his brother [the plaintiff] in the coin operated radio" and who testified that

---

[1] The bill states that the plaintiff testified that "his brother had negotiated with Mr. Jacobs and with Mr. Elliott in behalf of the plaintiff" and sets out the following: "Q. So that in some of your preliminary negotiations, your brother was acting for you, is that right? A. In the preliminary, yes. Q. With authority to act for you? A. I did not give him any authority. I didn't see any objection. I wish you would refer to which negotiations you mean."

"thereafter the two of them went to visit Mr. Jacobs and Mr. Elliott in Mr. Elliott's office." We notice also that the defendant testified that "when he met Harry Sandler, he told him the complete story all over again, and didn't rely upon Harry Sandler's finding out anything about the transaction from Hyman Sandler."

That the plaintiff had a sole and independent claim disposes of the contention that the defendant, by the form of the declaration, was deprived of opportunity to plead in abatement the nonjoinder of the brother as a necessary party. But we note also that, since a plea in abatement permits a defendant to set up matter not shown in the record (*Morton* v. *Sweetser*, 12 Allen, 134, 135), the plea, if valid, would have been open to him on this declaration. See also *May* v. *Western Union Telegraph Co.* 112 Mass. 90, 93 (the point cannot be taken by demurrer).

In specification to the incorrect contention that the form of the declaration permitted the application of the wrong measure of damages the defendant says that evidence of money which the plaintiff paid for the radios actually received "would not have been admissible at a trial conducted on the present theory . . . [but that it] was clearly admissible to support allegations that the plaintiff was stuck with the radios he had purchased." We hold, under the familiar rule, that evidence of the purchase and sale price would have been some evidence of what the value was at the time of sale assuming the representations to have been true, and equally admissible whether the plaintiff bought the instruments under a contract with the defendant or a contract with the corporation. While on this record we do not know that there was sufficient evidence to support a recovery for diminished value of the instruments, that has nothing to do with the variance issue.

The defendant also contends that the value of the "written franchise was not an issue at the trial because the plaintiff maintained, in effect, that it was a nullity." There is nothing in this. The plaintiff's contention that the defendant was, because of his representations, the real party

behind the franchise, and that he really bought it from the defendant, did not in any way make the value of the franchise less of an issue. As stated, it was necessarily an issue whichever of the ways under discussion the declaration was drawn. We do not agree that this declaration sounds like a declaration for rescission.

We have reviewed the aspects of claimed actual or possible prejudice from the variance and considered carefully all the defendant's arguments and all points argued by either side on any aspect of the case whether or not discussed herein. We find no prejudice or reasonable possibility of it from the form of the declaration.

4. The defendant filed a motion for a new trial. It was denied a considerable time after the bill of exceptions was filed. An express ground of that motion was that damages were excessive. The defendant says that it was denied "obviously in the belief that it was old business" and that an exception by the defendant to its denial would have been "an anomaly because the defendant was protecting a directed verdict and did not desire a new trial." The event disproves this and recognition of the possible eventuality should have shown its unsoundness at the time. However, because of the uncertainty on this record as to whether there was evidence sufficient to sustain the verdict in the particular amount, we point out that if there is now any matter relevant to any aspect of the trial which causes the trial judge to deem it necessary and appropriate to reconsider his action on the motion for a new trial, it is within his power to do so. *Waucantuck Mills* v. *Magee Carpet Co.* 225 Mass. 31, 33. See *Fine* v. *Commonwealth*, 312 Mass. 252, 257; *Gleason* v. *Hardware Mutual Casualty Co.* 331 Mass. 703, 710. If any misapprehension as to the proper rule of damages resulted from the plaintiff's attempt to show that he was defrauded because, as the plaintiff contended, the defendant said that the defendant personally was the seller (and we intend no suggestion), that would be chargeable not to the form of the declaration, but rather to the attempt to make a contention not open under either the

declaration or the evidence. That also would be matter which would be relevant on .a motion for a new trial. It would be open to the Superior Court to limit a retrial to the issue of damages if that appeared just. *Mathewson* v. *Colpitts*, 284 Mass. 581, 583. *Thomson* v. *Pentecost*, 206 Mass. 505, 513. *Whitney* v. *Lynch*, 222 Mass. 112, 116.

5. The plaintiff has presented a motion to amend his declaration. G. L. (Ter. Ed.) c. 231, § 125. In some cases where the plaintiff has made out a meritorious case but different from the one alleged we have given the plaintiff an opportunity to move to amend in the trial court. *Coburn* v. *Moore*, 320 Mass. 116, 124 (defendant's exceptions to denial of motions to direct where there was a substantial variance and the motion was grounded on the pleadings). *Bucholz* v. *Green Bros. Co.* 272 Mass. 49, 55–56. *Carson* v. *Brady*, 329 Mass. 36, 41 (bill in equity). In *Ferris* v. *Boston & Maine Railroad*, 291 Mass. 529, 534, we directed attention to the power in the Superior Court to allow an amendment (Rule 79 of the Superior Court [1932]) and said, ". . . if such amendment shall be allowed, the case will be retried on the issues thus raised." In other cases, where the verdict was not directed but the motion specified the variance, sustaining the defendant's exceptions has had the effect of allowing a new trial. *Richards* v. *New York, New Haven & Hartford Railroad*, 328 Mass. 204, 206. *Kabatchnick* v. *Hanover-Elm Building Corp.* 331 Mass. 366, 374. Amendments have been offered and allowed in this court in appropriate cases. *New England Foundation Co. Inc.* v. *Elliott & Watrous, Inc.* 306 Mass. 177, 181. *Mitchell* v. *Lonergan*, 285 Mass. 266, 271. (Each case a nonjury action.) *Whitney* v. *Houghton*, 127 Mass. 527, 529 (amendment allowed to cure a "technical variance" but in a case where a motion to direct a verdict had been denied). It is not necessary to determine whether this is an appropriate case in which to allow, in this court, a motion to amend. There is no fatal variance and an amendment is not essential. The motion to amend will therefore be denied without prejudice.

## II. The case against Jacobs.

The evidence in the action against Jacobs was insufficient to support the verdict. The plaintiff's brief refers to the plaintiff's testimony that at the June conference, at which both the defendants were present, "*they* told him" the facts as to four contracts with hotels (emphasis added). But later testimony of the plaintiff shows that it was Elliott who made the statement and not Jacobs. There is nothing shown on which the jury could reasonably have concluded that Jacobs, if he heard the statement by Elliott, knew or should have known that it was not true and was under a duty to the plaintiff to correct the statement. See *Goodwin v. Agassiz*, 283 Mass. 358, 362; Harper, Torts, 450. We see no basis for a finding that there was a partnership or joint enterprise between the defendants.

The plaintiff also relies on the facts, which the jury could have found, and which were relevant under an averment in the declaration not set out in this opinion, that when the manager of the Sheraton Hotel in Worcester said that he had some coin operated sets already in the hotel, the plaintiff "asked . . . Jacobs about the fact that he was supposed to have an exclusive agency for all coin operated radios in Massachusetts," and that Jacobs replied "Don't worry. We will take care of that, we will iron that out." The plaintiff contends that this ties Jacobs into the original representation made by Elliott in his presence in June that "We have a contract with Tradio in New Jersey and they have the exclusive rights for the coin operated machine . . . [and] that Tradio had a patent on the machine," and that this was a representation that the Tradio machine was the only coin operated machine so that "exclusive" meant a monopoly in the field of coin operated machines; also that the nature of Jacobs's reply at Worcester confirms this interpretation. We do not agree. At best for the plaintiff, Elliott's original statement was ambiguous and nothing that Jacobs did or said fastens on him a representation of exclusiveness in the sense urged. We do not reach the question of whether

there was any proof that there were any machines on the market other than Tradios. No other material misrepresentation by Jacobs is shown.

## III.

In the action against Elliott: the plaintiff's motion to amend the declaration is denied without prejudice to its presentation in the Superior Court in the event of a new trial; the plaintiff's exceptions are sustained; and, subject to action in the Superior Court, if any, in respect of a new trial, judgment is to be entered on the verdict for the plaintiff.

The plaintiff's exceptions in the action against Jacobs are overruled.

*So ordered.*