This certifies that this is the opinion of the Appellate Division in this cause.

**Charles R. Jannino**
**Clerk, Appellate Division**

**Geannine C. SZCZEPANIK**
**vs.**
**Paul T. BABBITT**

**No. 341**

District Court, Hampden, ss.
Appellate Division/Western District
Trial Court of the
Commonwealth of Massachusetts

**July 1, 1982**

John M. Finn, counsel for plaintiff
James F. Gettens, counsel for defendant

## DECISION AND ORDER

This cause came on to and was heard in the Appellate Division for the Western District sitting in Springfield upon report from—the Greenfield Division of the District Court Department and it was found and decided that there was no prejudicial error.

It is hereby ordered:

That the Clerk of the Greenfield Division of the District Court Department make the following entry in said case on the docket of said Court, namely:—

Report Dismissed.

Bernard Lenhoff, Justice
William T. Walsh, Justice
F. J. Larkin, Justice

Opinion filed herewith

Robert E. Fein, Clerk

Lenhoff, J. The plaintiff's complaint sets forth two counts for deceit; the first alleging that same was intentional, and the second for actionable deceit based on the defendant's alleged failure to ascertain the alleged falsity of a statement susceptible of actual knowledge. The plaintiff further contends that by reason of the plaintiff's deceitful conduct, she was induced to purchase realty from the

defendant and his former spouse, resulting in damages to her of $4,000 for a new, adequate water supply plus an additional $1,410 for rent and for travel to transport her children to and from school, including her own transportation costs to her place of employment from a greater distance than from the purchased property.

The defendant's answer admitted stating, directly and indirectly, to the plaintiff that there was no problem with the water and that the well on the concerned premises had always produced an adequate supply of water. Also, the defendant's answer denied the plaintiff's allegation that the defendant made the aforestated admission knowing that in fact there was a chronic problem with the well and that it had run dry on several occasions. The defendant further denied that his statements were false or that he could have discovered the falsity thereof because he was in a position to ascertain such fact as alleged by the plaintiff.

At the trial there was evidence tending to show the following:—

On or about November 29, 1980 at a time prior to the purchase by the plaintiff of property of the defendant and his former spouse, the plaintiff expressed to the involved broker concern regarding information she had received that the well on the premises had run dry. The broker indicated he would make inquiry of the sellers and would not deliver the purchase and sale agreement to them unless he was assured by them that there was no problem with the water supply. The broker inquired of the defendant as to whether he had a water problem and he received a negative response. Such testimony was qualified by the broker who testified that the defendant informed him that the defendant and his former spouse had no trouble with the water supply while they lived at the premises. The broker characterizing the above as an assurance that there was no trouble with the water supply had the defendant and his former spouse sign the agreement; and, said broker thereafter notified the

plaintiff of such assurance. The defendant nor his former spouse had not disclosed any experience by any occupant of any claim of an inadequate water supply.

At the closing, the plaintiff questioned the sellers if there had been any problem with the water supply and she stated they responded in the negative. However, the plaintiff was unable to recall if either or both had added the phrase "while they had lived there".

A former tenant of the defendant and the tenant's sub-tenant had observed the well to be dry on many occasions for about four months between November, 1978 to February, 1979 and again for most of the 1979 summer.

A second real estate broker disclosed that water supply complaints were brought to the defendant's attention on at least six separate occasions, but the defendant contended several times that he had no problems with water while he lived at the premises.

The property closing took place January 2, 1981 and the plaintiff testified that on the following January 5, 1981 the well went dry and remained in such state. She further stated that the water level was down to two or three inches below the intake pipe.

A well expert presented by the plaintiff tested the well on March 31, 1981 at the request of the defendant. He found that it produced "about two gallons per minute". He subsequently reported that a well be drilled, because he felt in the dry time of the year this well would dry up and the plaintiff would have no water.

On January 5, 1981, the plaintiff moved out of the house located in the town of Erving that she purchased from the defendant and his former spouse. She rented another place in the town of Ashfield and she continued to transport her children to Erving each day for school until March 19, 1981. Thereafter, because of the expense, she had her children attend school in Ashfield. When school closed, she returned to her home in Erving. On July 31, 1981, she observed

the well was completely dry.

The above mentioned well expert tested the well again on August 4, 1981. The water level had risen thirteen inches and had produced one-eighth of a gallon per minute, or one pint per minute which he considered inadequate. Based on his two tests plus information he received from others that the well was dry for four months in 1978 and 1979 and most of the summer of 1979, he rendered an opinion that the well was inadequate in 1978 and 1979.

A second well expert testifying as the plaintiff's witness also gave his opinion that the well was inadequate, basing his opinion on the first expert's testing and report.

Prior to the purchase of the property by the plaintiff, a former tenant of the defendant had cleaned around the foot valve at the intake pipe at the bottom of the well to make sure it was in working order. Also, after the plaintiff purchased the property, defects in the pump were repaired.

The defendant and his former spouse had no problem with the water supply while they lived at the premises. A tenant who occupied the premises from May to October, 1980 found the water supply ample. Of the six complaints hereinbefore mentioned, the defendant recalled only one complaint regarding the well running dry between November, 1978 through February, 1979. His response to that complaint was that he had no problem while he lived there and he suggested that the problem might be with the "foot valve at the intake pipe at the bottom of the well". In addition, the defendant testified that the tenant who complained was biased and that the sub-tenant was the tenant's friend. The defendant presented a witness long in the well installation business who testified that the first test of two gallons a minute was adequate and that a well producing one-half gallon per minute would be "more than enough" for five people in a home. He also claimed that the expert who tested the well on August 4, 1981 spoke to him the night

before the trial and informed him that the well produced a half gallon per minute, not one-eighth of a gallon. Later that night, he went to the plaintiff's property, opened the faucet and observed a substantial flow from the faucet. He also looked into the well and saw his reflection, although he never measured the depth of the water or ever tested it. He gave testimony as to what would have to be done in the event another well were needed.

The plaintiff filed thirteen (13) requests for rulings of law, the Court allowing all requests except the following six (6) requests that were denied:—

3. The evidence warrants a finding that the Defendant falsely stated a material fact, to wit: that the water supply had always been adequate, that he did so intentionally with the intent to induce the Plaintiff to buy the home he owned jointly with Patricia L. Babbitt, that the Plaintiff did rely on his statements, and, as a result suffered damage.

4. The evidence warrants a finding that Patricia L. Babbitt falsely stated a material fact, to wit: that the water supply had always been adequate, that she did so intentionally with the intent to induce the Plaintiff to buy the home she owned jointly with the Defendant, that the Plaintiff did rely on her statements, and, as a result suffered damage; and that in so stating, Patricia L. Babbitt was acting as the Defendant's agent, and accordingly, Defendant is liable therefor. Cf. **Haskell v. Starbird.** 152 Mass. 117; **Weeks v. Currier,** 172 Mass. 53; **Charbonneau v. Rokicki,** 278 Mass. 524.

8. The evidence warrants a finding that, although there was some water in the well after it went dry in January, 1981, and it

did not run completely dry again until Friday, July 31st, the water supply in the well has at no time been adequate for normal use since Plaintiff purchased the property. The fact that other intervening problems, such as a faulty pump and defective interior plumbing, delayed Plaintiff's attempts to use the water supply regularly, does not change the fact that the well was at all relevant times inadequate for normal use.

11. The evidence warrants a finding that the difference between the actual value of what Plaintiff received when she bought the house, and what she would have received if Defendant's statement was true is $4,000.00, the fair market cost of a new well. Accordingly, direct damages in that amount are warranted.

12. The evidence further warrants a finding that Plaintiff incurred consequential damages, as a result of being unable to occupy her home, in the amount of $1,410.00, the cost of transporting her children to school in Erving, plus the rental obligation she incurred in securing other housing.

13. The evidence warrants a finding for Plaintiff in the amount of $5,410.00, interest and costs.

The trial court made the following findings:—(The findings underscored are those which have aggrieved the plaintiff and are discussed hereinafter.)

This is an action of tort for deceit.

The Plaintiff purchased a dwelling located at 11 Highland Avenue, Erving, Massachusetts on January 2, 1981 for the price of $24,500.00.

Located on this property was a well that comprised the water source for the dwelling. The Plaintiff claims that two days after she moved into the house that there was either an inadequate supply of water or no water in the well and, as a result, had to live with friends elsewhere in the County and was put to extra expense for living expenses and for transporting her children to school.

The Plaintiff testified that she had an opportunity to observe the property before purchasing and that she received information that the well had run dry. She asked the broker to inquire of the sellers concerning this information and the Defendant's wife indicated that they had no trouble with the well while they lived on the premises.

There was evidence that the Defendant, his wife and children lived on these premises for 11 or 12 years, raised a family of six and stated at no time were they without water from the well.

Approximately two years before the sale of the property the Defendant moved and the property was rented to a neighbor who sub-let the premises. The neighbor testified that during the winter while the property was rented that his tenant had frozen pipes and required water from the neighbor's water source. (1) **There was conflicting testimony that the Defendant knew or should have known that the well supply at times was low.**

The Defendant and his wife were either separated or divorced at the time of the sale of the premises and the Defendant's wife testified that when asked specifically at the closing about the well supply stated that she had no lack of water during her occupation of the premises.

(2) There was further evidence that just before the trial in late July that a witness qualified in installing wells examined the well and its water supply and found it adequate.

On all the evidence I find (3) that the Defendant did not make a false statement and (4) that the well supply was and is adequate for the premises.

(5) Finding for Defendant on Count I, Count II and Count III.

The plaintiff claims to be aggrieved by the denial of his requests numbered 3, 4, 8, 11, 12 and 13 plus the trial court's findings of fact as underscored above, and to the court's failure to find as a fact the allegation of fact in paragraph 2 of count I of the plaintiff's complaint (paragraph 7 of count II is identical), both having been admitted in the defendant's answer. In consequence of such claims, the matter is before this Appellate Division for determination and disposition.

The plaintiff points out that the specified trial court's findings of fact are not, in her view, supported by the evidence. This contention is counter[1] to the established concept that findings of fact based on oral evidence are generally not reviewable. MacDonald v. Adamian, 294 Mass. 187, 190 (1936). Such findings are not subject to Appellate Division revision and are to remain intact unless it is shown that the trial judge was plainly wrong. Trovato v. Walsh, 363 Mass. 533, 535 (1973). The facts as found are not to be disturbed on appeal if warranted by any reasonable view of the evidence with the permissible inferences to be drawn therefrom. Barttro v. Watertown Square Theatre, Inc., 309 Mass. 223, 224 (1941). Stated another way, the Appellate Division cannot disturb findings of fact made by the trial justice unless the findings, as a matter of law, could not have been made. Heil v. McCann, 360 Mass. 507, 511 (1971); or such found facts are considered conclusive if there be credible evidence to support them. Glazier

v. Andrews, 349 Mass. 417, 419 (1965).

Although findings of fact, as such, are not generally reviewable, we may review the question as to whether, as a matter of law, the ultimate finding is either warranted or required by those facts. Soutier v. Kaplow, 330 Mass. 448, 450 (1953).

In deciding to review the claimed grievances of the plaintiff regarding found facts, we first look to the allegation of the plaintiff's complaint admitted in the defendant's answer. Said allegation reads as follows:—

"Prior to the conveyance, each defendant told the plaintiff, both directly and indirectly through their real estate broker, that there was no problem with the water, and that the well had always produced an adequate supply of water."

The trial judge found "that the well supply was and is adequate for the premises". Same being found by the trial judge to be adequate, it presupposes no problem as to inadequacy. Hence, this grievance is without merit.

The finding of fact "There was conflicting testimony that the defendant knew or should have known that the well supply at times was low," is supported by evidence, for the testimony of two experts that the well was inadequate was contradicted by a third expert who testified to the contrary. (Apparently the word "low" has been construed to be synonymous with "inadequate", otherwise "low" would not have any significance as a grievance.)

The finding of fact "There was further evidence that just before the trial in late July that a witness qualified in installing

---

[1]"counter," in that findings of fact, as of right, cannot or are not appealable to the Appellate Division for review by merely raising the issue in a draft report for the first time with no request seasonably filed prior thereto. Worcester County National Bank v. Brogna, 386 Mass. 1001 (1982).

wells examined the well and its water supply and found it adequate," is also supported by the evidence. A review thereof reveals testimony that the night before trial, the witness went to the plaintiff's premises, opened a faucet and observed a substantial flow of water plus he saw his reflection when looking into the well.

The finding of fact "that the Defendant did not make a false statement", cannot be said to be plainly wrong as the trial judge was not required to conclude otherwise in consideration of the adduced, conflicting evidence, any of which he could accept in whole, or in part, or totally reject.

A trial judge, as finder of fact, is free to disbelieve oral testimony even if it is uncontradicted. **Glazier v. Andrews,** supra. Also, evidence is not binding on a judge simply because it is offered by an expert. **Petition of the Department of Public Welfare to Dispense with Consent to Adoption,** 376 Mass. 252, 269 (1978). Custody of a Minor, 375 Mass. 733, 756 n.13 (1978).

The above discussion relating to the previous finding of fact, likewise applies to the trial judge's finding "that the well supply was and is adequate for the premises, and the ultimate finding for the Defendant on Counts I and II. (Count III having been waived before trial was added in error in the trial court's original finding.)

It therefore follows that our review results in concluding that the trial judge's findings of fact were warranted and must stand, undisturbed.

Regarding the plaintiff's requests for rulings of law, they are all what has been termed as "warrant requests", and to deny them amounts to a ruling that the evidence, as a matter of law, requires a finding for the other party. **Godfrey v. Caswell,** 321 Mass. 161, 162 (1947). The denial of this type of request is tantamount to a ruling that the trial judge, on the evidence, would be required by law to find contrary to the referred to finding of fact. **Bresnick v. Heath,** 292

Mass. 293 (1935). However, if there be findings of fact made by the trial justice, they may well have rendered the rulings harmless; the denial of which, without such findings, would be error. **DiGesse v. Columbia Pontiac Co., Inc.** 369 Mass. 99, 100-101 (1975). **Petition of New Bedford Child and Family Service to Dispense with Consent to Adoption,** 385 Mass. 482, 491 (1982).

Requests for rulings numbered 3 and 4 were denied by the trial judge, the gist of each being that the evidence warrants a finding that the defendant falsely stated a material fact. The trial judge found "that the Defendant did not make a false statement". From the evidence reported, the plaintiff was in the defendant's presence only at the closing. At such closing, in response to the plaintiff's question, defendant stated that there had been no problem with the water supply. However, the plaintiff could not recall if the defendant added the phrase "while they (defendant and his former spouse) lived there". There is evidence reported that both the defendant and his former spouse stated on several occasions that they had no problems with the water supply while they lived there.

The foregoing illustrates that the plaintiff failed to advance an account of the precise language of the statement in issue. In the absence of a clear and positive statement of fact, it leaves the evidence in an uncertain, indefinite and equivocal state on this most crucial point. Representations indefinite, imprecise, ambiguous or equivocal similarly engender no liability in tort. **Sandler v. Elliott,** 335 Mass. 576, 590, 591 (1957). **Warren H. Bennett, Inc. v. Charlestown Savings Bank,** 3 Mass. App. Ct. 753 (1975). Hence, the presented situation for the trial judge was to determine the facts; and, that he did. Considering the facts thus found that no false statement of a material fact has been made by the defendant, which finding is found to be warranted, the denial of requests 3 and 4 was proper as same were rendered immaterial or inapplicable. **Deutsch v.**

Ormsby, 354 Mass. 485, 487 (1968). Cassiani v. Bellino, 338 Mass. 765, 766 (1959).

It also should be pointed out that the trial judge evaluated the credibility of the various witnesses and gave what weight he determined should be given to their testimony. **Dolham v. Peterson,** 297 Mass. 479, 481 (1937); and, as previously set forth herein, his findings, if supported by any reasonable view of evidence, cannot be disturbed. **Weiner v. Egleston Amusement Company,** 293 Mass. 83, 86 (1935). **Barttro v. Watertown Square Theatre, Inc.,** supra. **Drain v. Brookline Savings Bank,** 327 Mass. 435, 438 (1951).

We are mindful of the **Maxwell v. Ratcliffe** decision in 356 Mass. 560 (1969) where the Supreme Judicial Court stated that a specific question asked created a special obligation to make disclosure of facts known or with respect to which a party had been put on notice, avoiding the making of half truths relating thereto. See **Kannavos v. Annino,** 356 Mass. 42 (1969). However, we also recognize that the burden of proof was on the plaintiff to prove, by a fair preponderance of the evidence, that the defendant made a false statement. The trial judge's finding that no such statement was made implies that the plaintiff failed to sustain the aforestated burden of proof.

As to the plaintiff's request number 8, the discussion hereinbefore relating to the finding of fact **"that the well supply was and is adequate for the premises"**, demonstrates that such finding was warranted by the evidence. Therefore, the denial of request number 8 was proper as said request was rendered immaterial or inapplicable.

Regarding requests numbered 11, 12 and 13, all three relate to damages due the plaintiff. The trial judge having decided in favor of the defendant, said requests concerning plaintiff's damages became immaterial or inapplicable and were rightfully denied.

Having found no prejudicial error, the report be and is hereby dismissed.

Bernard Lenhoff, Justice
William T. Walsh, Justice
F. J. Larkin, Justice
This certifies that this is the OPINION of the Appellate Division in this cause.
**Robert E. Fein, Clerk**